THE ST. LOUIS TRANSFER RAILWAY COMPANY, *Appellant*,. v. THE ST. LOUIS MERCHANTS BRIDGE TERMINAL RAILWAY COMPANY.

Division One, October 31, 1892.

1. **St. Louis City: STREETS: RAILROAD.** The city of St. Louis cannot confer on a railroad corporation the exclusive right to the use of one of its streets for the company's business.

2. ——: ——: ——: **ORDINANCE.** A clause in the city ordinance· conferring the power on a second railroad company to use one of the streets of the city provided "that the tracks of said company shall· be so laid as not to injure or destroy any tracks now laid by any other corporation and that the location of the route of said railway shall not in any manner interfere with any unforfeited rights of way heretofore granted by the municipal assembly by proper ordinance." *Held* that a prior company's privilege was but a qualified right of way; and that the second company could lay its tracks in the street upon territory not occupied by the prior company, or on which the prior company had not the right by ordinance to occupy when it desired to. do so.

3. **Constitution: RAILROAD: CROSSING STREET TRACKS.** The right of the second company to cross the street tracks of the first one is conferred by general law. (Constitution, art. 12, secs. 13, 14, 20; Revised Statutes, 1889, secs. 2543, 2626.)

*Appeal from St. Louis City Circuit Court.*—HON. JAS. E. WITHROW, Judge.

AFFIRMED.

*Hitchcock, Madill & Finkelnburg* for appellant.

(1) The city of St. Louis, under its charter, has sole power and authority to grant to any person or corporation the right to construct railways in said city. "Scheme and Charter," art. 3, sec. 26, cl. 11; 2 Revised Statutes, 1889, p. 2099. (2) A valid munici-

pal ordinance, as against persons bound thereby, has the force of a legislative act. If by such ordinance a right or privilege is granted upon condition that it be exercised in a prescribed manner, this is a condition precedent, which, if the grantee fail to fulfill, the right cannot be exercised. 1 Dillon on Municipal Corporations, sec. 308; *Dubach v. Railroad*, 89 Mo. 483. (3) If such grant be in derogation of common right, as by imposing a new burden upon a public highway, it will be strictly construed by the courts. The expediency of a law or ordinance, or of any condition thereby prescribed, if constitutional and valid, will not be inquired into by the courts. Sedgwick on Statutory Construction [7 Ed.] p. 296; *Yankee v. Thompson*, 51 Mo. 237; *County Court v. Griswold*, 58 Mo. 192; *State v. Addington*, 77 Mo. 117; *Dubach v. Railroad*, 89 Mo. 483. (4) It is admitted by the answer of defendant (respondent) that the privilege of locating its railroad on Hall street, in St. Louis, claimed by respondent under city ordinance numbered 14,078, was granted upon the express condition that the location of the route of said railway should not in any manner interfere with any unforfeited rights of way theretofore granted by the municipal assembly. This is an express condition precedent, and said privilege cannot lawfully be exercised by respondent except in [the manner so authorized. *Dubach v. Railroad*, 89 Mo. 488; 2 Greenleaf's Cruise, sec. 14, p. 31; *Jackson v. Stacey*, Holt N. P. Cas. 455; *Davenport v. Lamson*, 21 Pick. 74–5. (5) By accepting the provisions of ordinance, numbered 14,078, respondent entered into contractual relations with the city of St. Louis which imposed on it a public duty. A violation of the conditions prescribed by said ordinance, and accepted by respondent, in respect of the location of its road on Hall street, if resulting in injury to any person, would render respondent liable to a

private action by the person injured. *Fath v. Railroad*, 105 Mo. 537, 547. (6) It is conceded that appellant lawfully acquired, under ordinances 12,975 and 13,452, the right to construct, maintain and operate its railway on Hall street; that appellant has fulfilled the conditions of said ordinances, and that such right has not been forfeited. It is, therefore, an "unforfeited right of way," within the terms of defendant's ordinance number 14,078, and is within the express condition, thereby imposed on defendant, that the location of the route of its railway "shall not in any manner interfere with" any such right theretofore granted by the municipal assembly. (7) Appellant's said "right of way" on Hall street is a vested right, acquired from the city of St. Louis by contract, for a valuable consideration, which cannot be impaired or taken away by legislative enactment. *A fortiori* it cannot be impaired by a private corporation, under color of a subsequent grant in a municipal ordinance made upon the express condition that the grantee "shall not in any manner interfere with" any such right theretofore granted by the city. *Hovelman v. Railroad*, 79 Mo. 632. (8) Whether the municipal assembly of St. Louis has power, to any and what extent, to amend, alter or repeal the ordinance under which appellant claims, is immaterial in this cause. No such power has been exercised by the city. On the contrary, appellant's rights were expressly saved under the terms and conditions of ordinance 14,078, under which alone respondent claims. (9) The term "right of way," as used in ordinance, numbered 14,078, and as construed by the courts in reference to railroads, includes the use and occupation by appellant of the surface of Hall street, at all times, to whatever extent shall be reasonably necessary for the construction, the maintenance and the operation of its railway tracks and switches for the

purposes authorized by its grant, without any obstruction or interference therewith by any other person which would impair the complete enjoyment by appellant of the privileges granted to it, according to the nature and purpose of the grant.    2 Greenleaf's Cruise, sec. 1, and note, p. 25, title 24; *Atkins v. Bordman*, 2 Metcalf, 467-8; *Challis v. Railroad*, 16 Kan. 127; *Railroad v. North*, 23 Am. & Eng. R. R. Cases, 36, 43; *Railroad v. Railroad*, 110 N. Y. 128; 35 Am. & Eng. R. R. Cases, 267, 270.    (10)  This right of appellant's is not exclusive, in the sense that no other citizen could use the street as a highway or that no other railroad company could obtain permission from the city, in accordance with law, to lay a railroad thereon.    But it is an exclusive right in the sense that no other person or corporation can lawfully construct or operate a railroad on that street except by permission of the municipal authorities; and also that no person or corporation, obtaining such permission, can lawfully construct and operate a railroad on said street except upon compliance with the conditions prescribed.    City Charter, art. 3, sec. 26, cl. 11; 2 Revised Statutes, 1889, p. 2099; *Dubach v. Railroad*, 89 Mo. 488; *Railroad v. Railroad*, 97 Mo. 457.    (11)  Appellant is entitled to relief and protection against such an invasion of its franchises and such unlawful interference with its rights.    *Railroad v. Railroad*, 69 Mo. 65; *Dubach v. Railroad*, 89 Mo. 483; 1 High on Injunctions, secs. 912–16; *Railroad v. Railroad*, 110 N. Y. 128; 35 Am. & Eng. R. R. Cases, 270, and cases cited.

*John H. Overall* for respondent.

(1)  The main question in this case is as to the proper construction and effect of the two provisos in section 1 of the ordinance authorizing respondent to

construct its road from the Union Depot to the Merchants bridge, and especially on Hall street, where appellant had a track laid under an ordinance of prior date. Said provisos are as follows: "Provided, that the tracks of said company shall be so laid as not to injure or destroy any tracks now laid by any other corporation; and provided, further, that the location of the route of said railway shall not in any manner interfere with any unforfeited rights of way heretofore granted by the municipal assembly by proper ordinance." The term "right of way," as used in the last proviso quoted above, means, so far as appellant is affected thereby, the superficial area on Hall street, which the appellant then had the right to occupy with its tracks, and for the passage thereon of its engines and cars. *Williams v. Railroad*, 50 Wis. 71, 76; *Railroad v. North*, 23 Am. & Eng. R. R. Cases, 36; *Pfaff v. Railroad*, 108 Ind. 144; *Railroad v. People*, 98 Ill. 350; *Dougherty v. Railroad*, 19 Mo. App. 419; Mills on Eminent Domain, sec. 211, and cases cited; Revised Statutes, 1889, secs. 2612, 2614. (2) It is the location of the route of the respondent's railway on Hall street which it is declared shall not interfere with any unforfeited rights of way theretofore granted. "Route" means "the course or way traveled or passed, or to be passed," and the second proviso evidently means that the course, or way to be used by respondent, was not to interfere with, or encroach upon, the space set apart for any other railroad, the right to use which remained unforfeited. *Railroad v. Railroad*, 97 Mo. 457; note to *Railroad v. Speelman*, 30 Am. & Eng. R. R. Cases, 328; *Railroad v. Railroad*, 25 Am. & Eng. R. R. Cases, 150; *Railroad v. Railroad*, 110 N. Y. 128; 35 Am. & Eng. R. R. Cases, 270. (3) The words "unforfeited right of way," taken in their natural and

ordinary signification, and especially in view of their use in connection with the words "location of the route" of the respondent's railway, can only be construed to refer to ground on which some other railroad has been authorized to lay its tracks, and upon which, therefore, the respondent was prohibited from locating its route, or line of railway.   (4)  Said second proviso was not intended to secure to other railroads (already constructed or previously authorized by the municipal assembly to be constructed  on  streets along which respondent was authorized by the city ordinance to construct its road) the exclusive use  of such streets for the passage of their trains, nor was it intended to deprive the respondent of its statutory and constitutional right of crossing the tracks of such railroads when necessary, in order to construct its tracks on such streets, under the grant to it, contained in the city ordinance.  *Railroad v. Railroad*, 50 Barb. 285; *Railroad v. Railroad*, 97 Mo. 457. (5)  Such crossings of appellant's tracks as are indispensably necessary in the construction of respondent's road on Hall street between North Market street and Bremen avenue, in order to connect its road at the points named with the remainder of  its route, are, by necessary implication, authorized by respondent's ordinance. *Ut res magis valeat quam pereat.*   Endlich on Interpretation of Statutes, sec. 181; Cooley on Constitutional Limitations, 73; *Railroad v. Railroad*, 72 Mo. 70; Sutherland on Statutory Construction, sec. 341, and cases cited; Charter City of St. Louis, art. 3, sec. 26; *Railroad v. Moss*, 23 Cal. 324; *Railroad v. Railroad*, 108 Ill. 265; *Railroad v. Railroad*, 105 Ill. 389; *Railroad v. Railroad*, 121 Mass. 125; *Railroad v. Railroad*, 50 Barb. 285; *Railroad v. Railroad*, 30 Ohio St. 604. (6)  The first proviso, which prohibits the respondent from so laying its tracks as to injure or destroy any tracks then laid by any other corporation, impliedly

recognizes the right of the respondent to cross, or connect with, the tracks of such corporation, and was intended to provide, in a general way, that such crossings should be made in a manner which would not injure, or destroy, appellant's tracks. The presence of this proviso shows that appellant's construction of the words "right of way" in the second proviso is erroneous and untenable, for, under the technical and scholastic signification given to the words "right of way" by appellant, the first proviso becomes superfluous and unnecessary. *Tinkham v. Tapscott*, 17 N. Y. 141; Potter's Dwarris; Domat's Rules, sec. 21. (7) The municipal assembly is conclusively presumed to have known the condition of the streets over which rights of way had been granted to other railroads, and, as appellant's tracks were already laid on Hall street at the time respondent's grant was made, the first proviso, prohibiting injury to, or destruction of, tracks already laid, must be construed as having been intended to refer to appellant's tracks on Hall street, as well as to tracks of other railroads already constructed on other streets, over which respondent was granted the right to build its road; and the second proviso can only be construed as referring to streets on which a right had then been granted to lay tracks, but on which tracks had not then been laid. Charter City of St. Louis, art. 2, sec. 26, par. 2; Cooley on Constitutional Limitations, 220, 257; *DeCamp v. Eveland*, 19 Barb. 81; *Lusher v. Scites*, 4 W. Va. 11. (8) The hearing upon the merits having involved the determination of a question of fact, the supreme court will be guided by the finding of the trial court. Even in an equity case, the invariable rule is, that, on appeal, unless the finding below was wholly against the evidence, or clearly against its pronounced weight, the supreme court will be governed by the result arrived at

by the trial court. While the same weight is not given
to it as is given to the verdict of a jury in an action at
law, yet it has decided, marked and almost controlling
influence upon the appellate court. *Boyle v. Jones*, 78
Mo. 703; *Judy v. Bank*, 81 Mo. 404; *Mathias v. O'Neill*,
94 Mo. 520; *Snell v. Harrison*, 83 Mo. 652; *Bank v.
Murray*, 88 Mo. 191.

BRACE, J.—By the constitution and laws of this
state every railroad corporation "organized for the
purpose" has "the right to construct and operate a
railroad between any points within this state," and
"with its road to intersect, connect with or cross any
other railroad," and to "construct its road across,
along or upon any street," with the assent of the cor-
porate authorities of the city in which such street is
situate. Constitution, art. 12, secs. 13, 14, 20;
Revised Statutes, 1889, secs. 2543, 2626.

By its charter the mayor and assembly of the city
of St. Louis have power within the city "by ordinance
not inconsistent with the constitution or any law of
this state," or of its charter, to "regulate the use of the
streets of the city," and "to grant to persons or corpora-
tions the right to construct railways in the city, subject
to the right to amend, alter or repeal any such grant in
whole or in part, and to regulate and control the same
as to their fares, hours and frequency of trips, and the
repair of their tracks, and the kind of their rails and
vehicles." Scheme & Charter, art. 3, secs. 2611, 2612.

The plaintiff is a duly incorporated railroad com-
pany organized for the purpose of constructing and
operating a line of railroad within the city, along a
route beginning at or near the crossing of Arsenal
street by the St. Louis, Iron Mountain & Southern
railroad in the southern portion of the city to a point
near the waterworks in the northern portion of the city

to be used in the business of conveying persons and property, and "especially of transferring cars to and from manufacturing and business establishments along its route, and to and from other railroads and ferryboats."

Defendant is also a duly incorporated company, organized for the purpose of constructing and operating a railroad connecting the Merchants bridge over the Mississippi river at Ferry street with the Union Depot, and all other railroads terminating in the city, to be used in a similar line of business.

By an ordinance approved June 11, 1884, and subsequent ordinances approved December 15, 1885, and February 18, 1886, the plaintiff was authorized to construct and operate its railroad between its terminal points aforesaid across, on and along certain streets in said ordinance designated, and, among others, on and along Hall street between Bremen avenue and North Market street, a distance of about one mile, on which it was authorized to lay a double track in accordance with plans to be approved by the board of public improvements; and with like approval to "connect their tracks by switches and sidetracks with any warehouse, factory, store, lumber, coal or stock yards, or depot yards, and transfer boats of any transportation company or other commercial or manufacturing establishment located adjacent to the railway of said company; said switches and sidetracks shall be so constructed as in no manner to interfere with the public use of the streets or alleys across which they may be laid, and they shall be removed by said company whenever it shall be so directed by the municipal assembly."

Afterwards, by an ordinance approved July 9, 1887, the defendant company was authorized to construct and operate its railroad with double tracks

between the Union Depot and Chain of Rocks, in said city, across, on and along certain streets, in said ordinance designated, and among others on and along that part of Hall street, on and along the center of which the plaintiff by the precedent ordinances was authorized to lay and operate its tracks; *provided*, "that the tracks of said company shall be so laid as not to injure or destroy any tracks now laid by any other corporation, and provided, further, that the location of the route of said railway shall not in any manner interfere with any unforfeited rights of way heretofore granted by the municipal assembly by proper ordinances."

It appears from the evidence that Hall street between North Market street and Bremen avenue is one hundred feet wide, without pavements, lamp posts or sidewalks. It lies through bottom lands which the Mississippi river overflows in times of high water. The adjoining property is for the most part used for sawmills and lumber yards, of which there are some seven or eight in this distance of one mile. Besides these industries there are the Union stock yards at Bremen avenue and the Mallinckrodt chemical works at Salisbury street.

At the date of the passage of the ordinance authorizing the defendant to lay its tracks on Hall street, the plaintiff had constructed its double track railway along the center of that part of Hall street in controversy, and some switches connecting the same with premises occupied on either side of said street; and in the spring of 1889 was operating its main tracks and some four or five of such switches on, along and across said part of said street, when the defendant proposed under the authority of its said ordinance to lay down and operate its double track railway on that part of said street.

Whereupon this action by injunction was commenced in the circuit court of St. Louis to restrain the defendant from constructing its proposed railway along Hall street, and from laying any tracks, sidetracks or switches over or along said street.   A temporary injunction was granted and the case afterwards coming on to be heard on the merits in term, after issue joined, the issues were found for the defendant, the injunction dissolved, plaintiff's bill dismissed, the damages assessed, and final judgment rendered in favor of defendant for the amount thereof, and plaintiff appealed.

It appears, that at the time the temporary injunction was applied for and granted, the defendant was engaged in constructing, and had filed with the board of public improvements a map or plan of, its proposed railway, including a track on Hall street; and on the trial produced two plans for the proposed construction thereof along Hall street.   One of these plans contemplated the laying of a single track on Hall street from North Market to Bremen avenue on either side of plaintiff's double track in the center of said street; while the other contemplated the laying of a double track by defendant on Hall street from North Market to Dock street on one side of plaintiff's tracks, then crossing those of plaintiff and continuing for the remaining distance of Hall street on the other side of plaintiff's track.   If the latter plan be adopted defendant's double tracks would cross one of plaintiff's switches between Destrehan and Salisbury street, its main double track line at Dock street, and one of its switches between Montgomery and North Market streets.   If the first plan be adopted defendant's eastern single track would cross one of plaintiff's switches between Destrehan and Salisbury street, one at Dock street, and one at St. Louis avenue, and the main

double track between Warren and North Market streets; and its western single track would cross plaintiff's double track at Bremen avenue, one of its switches at Mallinckrodt street, one at Dock street, and one at Montgomery street.

The evidence tended to show that the width of Hall street (one hundred feet) was amply sufficient for the construction and operation of both lines of railroad upon it as provided for in the ordinances, according to either of the plans proposed; that the only interference in the operation of either would be the necessary delay in the movements of its trains or cars at the crossings when that space should at the time be occupied by the trains or cars of the other moving over the same crossing.

From the evidence of the business now being done on plaintiff's road in the street and the immediate use the defendant proposes to make of the street for its business, it is apparent that the business of both can be conducted on the street for the purposes for which they were created without serious injury to the interests of either; and while it is true that these delays in the operation of plaintiff's road will be increased and the difficulties and dangers attendant upon such operation enhanced as the business of each road in the street increases, yet it is far from appearing that the legitimate operation of both would ever become impracticable under such reasonable rules and regulations as self interest would dictate that each should observe in moving its trains and cars, and that might be prescribed by the city in the exercise of its legitimate power to regulate the use of its streets.  And while the value of plaintiff's franchise will be depreciated to the extent of the inconvenience and delay occasioned by such crossings as the result of a healthy competition with it by the defendant's road for a class of business

necessary to be done for the public good which alone affords a reasonable pretext for the existence of either road in the streets of the city. Such depreciation is *"damnum absque injuria,"* since the city could not grant the plaintiff an exclusive right to the use of the street for its business. *Railroad v. Railroad,* 97 Mo. 457. On account of such depreciation plaintiff cannot complain, since its own grant was dependent on the condition that its tracks should be so constructed and operated as not to interfere with the public use of the street; such being the character of the use to which defendant proposes alone to subject it.

The learned counsel for the plaintiff concedes that plaintiff's right under its prior ordinance "is not exclusive, in the sense that no other citizen could use the street as a highway, or that no other railroad company could obtain permission from the city in accordance with law to lay a railroad thereon, but insists that it is an exclusive right in the sense that no other person or corporation can lawfully construct or operate a railroad on that street except by permission of the municipal authorities, and also that no person or corporation, obtaining such permission can lawfully construct or operate a railroad on said street except upon the compliance with the conditions prescribed; and it is maintained that the defendant acquired no right to construct and operate its railroad on Hall street by virtue of the ordinance authorizing it so to do, for the reason that it cannot comply with the conditions contained in the provisos thereof, "that the tracks of said company shall be so laid as not to injure or destroy any tracks now laid by any other corporation, and that the location of the route of said railway shall not in any manner interfere with any unforfeited rights of way heretofore granted by the municipal assembly by proper ordinance."

It appears from the evidence that the main line of defendant's track with some of its switches was laid in Hall street at the time the defendant's ordinance was passed. The assembly knowing the condition of the street, and the public use to which it was subjected by plaintiff with its assent, proposed in unmistakable terms to subject the street to another public use of a similar character by the defendant; in doing so however, it did not propose to deprive the plaintiff corporation of the use by it of the street to which the assembly had theretofore assented, which use was subject to the right of every other citizen and of every railroad company having the assent of the city authorities to cross its tracks in the legitimate pursuit of their business. Hence, the proviso. The defendant in constructing and operating its road in the street is not to injure or destroy any tracks already laid by the plaintiff, or to so lay its tracks as to interfere with any unforfeited right of plaintiff to lay and operate other tracks on said street. This is, we think, the plain and obvious meaning of the proviso; and when so construed it is also obvious that the defendant can construct its railroad in said street as it proposes to do, without injuring or destroying plaintiff's tracks and without interfering with any right plaintiff may have to lay down and operate other tracks in said street.

The vice of the argument of plaintiff's counsel by which the privilege of laying down and operating its tracks in Hall street, granted in express terms in the ordinance, is sought to be rendered entirely nugatory, by the provision that they must be so laid as not to interfere with any unforfeited rights of way theretofore granted by the assembly to the plaintiff, is in assuming that the assembly by the term "right of way" meant an absolute and unrestricted right of way, such as one might acquire by grant over the land of another or by a railroad company by the exercise of the power of eminent

domain over private property. The assembly could not have intended the expression to bear such a meaning; for it was not within the power of the assembly to make such a grant. The privilege which a railroad company acquires by the assent of the city authorities that its tracks may be laid down and operated in the streets of the city can never be more than a qualified right to the use of the street as a public highway in common with every other citizen, and as no one assembly can by giving its assent to one company limit the power of a subsequent assembly to give a like assent to another, the right is further restricted to the use of the street as a highway in common with any other railroad company acquiring a similar right in the same street by the assent of the city authorities. For convenience this privilege may be, and, in common parlance, is, called a right of way, but it is far from being an absolute and unconditional one, such as admits of no obstruction by crossing or otherwise without consent, and is always burdened by the right which every railroad has to cross the tracks of another imposed by statute law. It was this privilege, this qualified right of way of plaintiff in Hall street which was not to be interfered with, and which will not be interfered with, within the meaning of the ordinance by the defendant in laying down its tracks and operating them as it proposes to do upon territory in said street not occupied by the tracks of the plaintiff already, or which it has a right by ordinance to occupy for that purpose, whenever in the future it may have occasion so to do.

The right to cross plaintiff's tracks in the street is derived not from the ordinance giving assent, but from the general law of the land, and is the only interference to which plaintiff will be subjected.

The judgment of the circuit court is for the right party, and is affirmed. All concur, except BARCLAY, J., not sitting.