THE KANSAS CITY SUBURBAN BELT RAILROAD COMPANY v. THE KANSAS CITY, ST. LOUIS & CHICAGO RAILROAD COMPANY et al., Appellants.

Division Two, December 16, 1893.

1. **Condemnation Proceeding**: RAILROAD CROSSING ANOTHER: CONSTITUTION: STATUTE: PRACTICE.   Under Constitution, article 12, section 13, conferring on a railroad company the right to cross any other railroad and Revised Statutes 1889, section 2543, providing that if a railroad company desires to cross another company's road, the companies shall join in making the crossing and if they cannot agree on the compensation therefor or the manner of such crossing the same shall be determined by commissioners, the circuit court may, in a condemnation proceeding, appoint commissioners to determine the manner of crossing and the amount of compensation without first passing on defendant's objection that such crossing will materially interfere with the use of its road.

2. ———: ———.   The state may authorize the construction of other railroads across another railroad's track whenever the public welfare so requires.   Neither priority in the date of one charter over another nor the prior location and construction of one road over another affects this right.

3. ———: ———.   While one railroad may so build across the track of another, it cannot appropriate to its own use the exclusive possession of the former's track or deprive it of their use.

4. —— : ——. The facts in this case *held* not to show a serious interference with defendant's franchise.

5. **Practice**: RAILROAD CROSSING: CONDEMNATION PROCEEDING: INSTRUCTIONS. The trial court is not required to give instructions to the commissioners further than those contained in the order of appointment in the condemnation of a railroad track for crossing purposes of another road and it is not error to refuse to do so.

6. —— : —— : —— : ——. Erroneous instructions given at the request of a party cannot be complained of by him as error.

7. —— : —— : —— : COMMISSIONERS' REPORT: JURY. Under Constitution, article 12, section 4, and Revised Statutes, section 2738, the defendant in a proceeding to condemn a railroad track for crossing purposes of another road is entitled to a jury trial on the question of compensation only and cannot have the commissioners' report set aside *in toto* and the question as to the manner of crossing also be determined by a jury.

8. —— : —— : —— : CHANGE OF VENUE. After the commissioners made their report and after defendant filed its exceptions to the same, the latter applied for a change of venue because of plaintiff's undue influence over the minds of the inhabitants of the county. *Held*, that the court did not lose its jurisdiction by reason of such application and it not being founded on the judge's prejudice he properly passed on the exceptions to the report as to the place and manner of making the crossing before granting the change of venue for trial of the question of compensation by jury.

9. —— : —— : —— : DAMAGES: EVIDENCE. On the trial of the question of the amount of compensation to be paid defendant, opinions of the witnesses as to the probability of accidents at the crossing are not admissible to prove a depreciation in the value of defendants' property.

10. —— : —— : —— : ——. No allowance can be made defendant in such case for delay, inconvenience or damages arising from a part of the crossing which is in the street.

11. —— : —— : —— : ——. Evidence of damage arising from the stopping of trains at the crossing in compliance with city ordinances requiring all trains to stop when within seventy-five feet of a railroad crossing was incompetent, as defendant's charter subjects it to all reasonable regulations of a public character then in force or that might afterwards be prescribed.

12. —— : —— : —— : INSTRUCTION. An instruction upon a mere abstract proposition of law or one not authorized by the pleadings and evidence should not be given.

*Appeal from Clay Circuit Court.*—HON. J. M. SAN-
DUSKY, Judge.

AFFIRMED.

*Gates & Wallace* for appellants.

(1) The court erred in appointing the commis-
sioners, against the objection of the defendants that
the crossing at Gillis street in the manner proposed in
the petition would materially interfere with the use of
the railroad and property of the defendants, contrary
to sec. 2741 of the Revised Statutes, and in denying
the defendants a hearing on this question. *Railroad
v. Railroad*, 94 Mo. 536; *In re Railroad*, 34 Minn. 227;
*Telegraph Co. v. Bridge Co.*, 36 Kan. 118; *Railroad
Co.'s Appeal*, 122 Pa. St. 511. (2) After the court
itself had refused to pass upon the question of the
interference by the petitioner with the use by the
defendants of their railroad and property, it should at
least have instructed the commissioners that such a
material interference was not authorized. *Railroad v.
Railroad*, 4 Woods, 360; *Railroad's Appeal*, 103 Pa.
St. 621; *Perry Co. v. Railroad*, 150 Pa. St. 193. (3)
That the surface crossing at Gillis street would mater-
ially interfere with the uses to which the defendants'
property had been lawfully appropriated was shown by
the evidence introduced on the exceptions to the com-
missioners' report and in the trial on the issue of dam-
ages. It was shown not only that it interfered mater-
ially with the use of the adjacent lands for switching
purposes but necessitated the entire abandonment of a
portion of the switch yards of the defendants and the
removal of the switches east of the crossing. This,
added to the extreme danger of collisions, constituted
a serious interference with the defendants' franchise.
*Railroad Co.'s Appeal*, 122 Pa. St. 511. The court

erred in refusing to instruct the commissioners that they had the power to require an overhead crossing. (4) Under the constitution and laws of the state the defendants were entitled to have the report of the commissioners set aside as a whole and all the matters in controversy determined by a jury as a matter of right. Section 4, article 12, of the Constitution of Missouri; Revised Statutes 1889, sec. 2543; *Railroad v. Story*, 96 Mo. 611; *Bridge Co. v. Ring*, 58 Mo. 491; *Railroad v. Brick Co.*, 85 Mo. 335. (5) The court erred in making the order confirming the report of the commissioners as to the place and manner of crossing after the application for a change of venue had been submitted. The court should have acted upon the motion when it was presented, instead of taking it under advisement, and proceeding in the meantime to hear and dispose of the exceptions to the commissioners' report. *Dowling v. Allen*, 88 Mo. 293; *State v. Shipman*, 93 Mo. 147; *Wilson v. Henderson*, 15 How. Pr. 90. (6) The court should have set aside the report of the commissioners as to the point and manner of crossing, if for no other reason, because of the extraordinary danger of a grade crossing to the property of both companies and the lives of the people traveling on both roads. *Railroad v. Railroad*, 150 Pa. St. 193; *Railroad v. Railroad*, 74 Iowa, 554; *Railroad v. Railroad*, 6 Bissell, 219; *Railroad v. Railroad*, 77 Pa. St. 173. (7) The defendants had been granted a right of way across Gillis street and had an easement therein which could not be damaged without the payment of compensation. *Railroad v. Railroad*, 89 Ga. 205; *Railroad v. Railroad*, 15 Ill. App. 587; *Railroad v. Village*, 14 Ill. App. 615; *Railroad v. Railroad*, 100 Ill. 21; Lewis on Eminent Domain, sec. 644. (8) The court committed error in refusing to submit to the jury as an element of damage the loss of earning or business capacity sustained to

the defendants' property by the interference with free access between different portions of its road; and in instructing the jury that no damages could be allowed for interruptions and inconvenience occasioned to the defendants' business. *Railroad v. Shambaugh*, 106 Mo. 557; *Railroad v. Railroad*, 100 Ill. 21; *Railroad v. Railroad*, 115 Ill. 375. (9) The court also committed error in refusing the defendants' sixth instruction, which required the petitioner to pay the defendants a sufficient amount to place their road and switching grounds as nearly as possible in as good and convenient condition for business as it was before the crossings were made. *Commissioners v. Railroad*, 90 Mich. 385; *Railroad v. Railroad*, 96 Ill. 274.

*Trimble & Braley* for respondent.

(1) The trial court did not err in appointing commissioners before hearing appellants upon the question as to whether a grade crossing would materially interfere with the use of their property. *Railroad v. Railroad*, 97 Ill. 506; *Railroad v. Railroad*, 108 Ill. 265; *Railroad v. Railroad*, 3 Ind. 464; *Railroad v. Railroad*, 30 Ohio St. 604; *Hannibal v. Railroad*, 49 Mo. 480; *Railroad v. Railroad*, 97 Mo. 457. (2) Appellant's second and third points are not well taken. (3) The court was under no legal *obligation to instruct the commissioners*. See *Railroad v. Railroad*, 110 Mo. 510. (4) The appellants were not entitled, under the statutes or constitution, to have the report set aside as a whole, as a matter of right, and both the point and manner of crossing and the amount of compensation determined by jury. At common law and independent of the statute and constitution, neither party had a right to a jury trial on any question involved in a condemnation suit. And no such right exists in this state unless

conferred by the express terms of the statute or the constitution. Proffatt on Jury Trial, sec. 84, 87, 88 and 104; Lewis on Eminent Domain, sec. 311; Mills on Eminent Domain, secs. 91, 253, 254; *Railroad v. Congregation*, 53 Pa. St. 449; *People v. Smith*, 21 N. Y. 597; *Beekman v. Railroad*, 3 Paige, 75; *Ames v. Railroad*, 21 Minn. 241–291; *Railroad v. Ferris*, 26 Texas, 588. (5) The constitution being silent as to how the point and manner of crossing should be determined, the legislature had the undoubted right to provide such means for determining it as it saw fit. It has provided that it shall be determined by three disinterested commissioners who shall be freeholders, residents of the county where the lands lie (secs. 2543 and 2736, Statutes, 1889). And the legislature having provided who shall determine it, no other person or tribunal on earth can do it. Mills on Eminent Domain, secs. 84, 87; *St. Louis v. Gleason*, 93 Mo. 33; *State ex rel. v. St. Louis*, 1 Mo. App. 508; *Bridge Co. v. Ring*, 58 Mo. 491; *Springfield v. Whitrack*, 34 Mo. App. 642; *Gray v. St. Louis*, 81 Mo. 126; *Ellis v. Railroad*, 51 Mo. 203. (6) The court did not err in refusing to pass on the application for a change of venue until after it had heard and determined the exceptions. *Lee v. Smith*, 84 Mo. 304. (7) The court did not err in excluding from the consideration of the jury the opinions of witnesses as to the probabilities of collisions and accident at the crossing. The character of the grades and the effect of the crossing upon the value of defendant's road as a unit was all shown and properly submitted in the instructions which the court gave. Possibilities or probabilities of collisions are not proper elements of damages. Mills on Eminent Domain, sec. 44a; *Railroad v. Railroad*, 105 Ill. 110; *Railroad v. Railroad*, 105 Ill. 388; *Railroad v. Railroad*, 121 Mass. 124; *Railroad v. Railroad*, 30 Ohio Stat.

604.   (8) As to the appellant's point 10, it is sufficient. to say that whilst the court at first refused to admit. the evidence relating to the interlocking switch, that. it afterward admitted all the evidence offered on that subject and instructed the jury concerning it.   (9). The "hill" referred to in appellant's point 11 is at the nearest point more than a half mile away from the. crossing and if trains did sometimes stall in going up. that hill it proves nothing bearing on this case.   (10). The action of the court in excluding all damage or. inconvenience occasioned by reason of being compelled to stop at the crossing in compliance with the ordinance was correct.   The defendants took their franchises subject to just such inconvenience, and are. under obligation to suffer them for the public good.' Nothing can be allowed for the inconvenience of stopping and waiting whilst plaintiff's trains pass over. the crossing in Gillis street.   *Railroad v. Railroad*, 97 Mo. 457; *Railroad v. Railroad*, 111 Mo. 666; authorities cited under point 8.   (11) The plaintiff's right to. grade crossings was fixed by the state constitution, the state statutes, and by the charter and ordinances of. Kansas City.   And defendant held its property and franchises subject to the exercise of this right, and must bear the annoyances, inconvenience and delays incident thereto for the public good.   Constitution, 1875, art. 12, secs. 13, 14 and 20; Revised Statutes, secs. 2543, 2626; Ordinance 16625, sec. 1 and 6 (p. 542. Transcript); Charter Kansas City, art. 3, sec. 1; Charter of Kansas City in force at time of enacted. ordinance under which plaintiff built, art. 3, sec. 1; Ordinance No. 1523, secs. 1, 2 and 4. See, also,. authorities cited under points 8 and 9 above.

BURGESS, J.—This is an action by the Kansas City Suburban Belt Railroad Company, petitioner, against.

the Kansas City, St. Louis & Chicago Railroad Company, and the Chicago & Alton Railroad Company, lessees of the last named company, to condemn a right of way for its double track railroad across the lands and tracks of the defendants, near Gillis street in Kansas City, and also at a point about three miles further east, near the Blue river. The proposed business of the petitioner is that of a terminal road for lines entering the city, and also for switching and suburban travel.

In 1872 Kansas City, by ordinance, duly granted to the defendants the right to locate their railroad at grade across Gillis street, and by section 6 of said ordinance reserved to itself, the city, "the right at any time to exercise at any and all points and places within its limits all the rights and powers conferred upon, or granted to, said city by the thirty-second clause of section 1, of article 3, of the present charter of the City of Kansas, being an act of the general assembly of the state of Missouri, approved March 24, 1875, and that the rights of the said city granted by the said clause are in no way whatsoever to be impaired by the terms and provisions of this ordinance."

The rights so reserved to the city in section 6 of said ordinance, as shown by the thirty-second clause of section 1, of article 3, of said charter, were the rights conferred by the legislature upon the city council which provided that the said council shall have power within the jurisdiction of the city, by ordinance, "to direct and control the laying and construction of railroad tracks * * * in the streets and alleys * * * and to direct the use and regulate the speed of locomotive engines within the limits of the city. * * * "

In 1890 Kansas City, by ordinance numbered 1523, established the grade of Second street and of Gillis street, as well as of all streets intersecting Second

street between Wyandotte and Gillis, and granted to the plaintiff the right to locate and operate its railroad on Second street and across other streets at the grades, as so established. By sections 2 and 4 of said ordinance the grade of Gillis street was established at the tops of the rails of defendants' road, and plaintiff in express terms was granted the authority to cross defendants' tracks in said Gillis street at said grade.

That part of plaintiff's road involved in this controversy, as authorized by its charter and by the ordinances of the city, was in Second street, running from Wyandotte street east to Harrison street, thence east to the intersection of defendants' road with Gillis street, thence across defendants' tracks in Gillis street to the eastern city limits. The Chicago & Alton road runs east from the Union depot along the Missouri river bottom, and near to the south bluff. The petitioner's road commences on the bluff at Second and Wyandotte streets, and runs east on Second street down a steep hill, striking the river bottom at Gillis street, the place of the crossing chiefly in controversy, running on Second street almost to Harrison, and then curving north and crossing Gillis just north of First. The descent commences at Main street and continues until after the route passes both the Alton and the Missouri Pacific tracks. From Main to Grand avenue the fall is two hundred and four feet to the mile; from Grand avenue to Holmes, a distance of one thousand and three hundreed feet, one hundred and sixteen feet to the mile; from this place to the place of the crossing of the Missouri Pacific, a distance of about four hundred feet, the grade is fifty-two feet.

After plaintiff's road and grade was so fixed by the city authorities, it undertook to agree with the defendants as to the point and manner of crossing their road at Gillis street, and at another point about

three miles east of that, near Blue river, and as to the compensation to be paid therefor, but were unable to arrive at any agreement. Then this suit was instituted to condemn a right of way for the plaintiff's railroad across the lands and tracks of the defendant on Gillis street, and also at the point near Blue river, and asked the appointment of commissioners to fix the point and manner of such crossings, and to determine and assess the compensation that should be allowed to the defendants therefor.

On the day set for the appointment of commissioners, the defendants appeared and filed answer, alleging, among other things, that a grade crossing would be dangerous and would materially interfere with the use of defendants' property. The court refused to hear evidence, then, on the matters set up in the answer, but appointed commissioners and afterwards heard and determined all the matters set up in the answer.

The commissioners viewed the property and consumed several days in hearing the testimony of witnesses and the argument of counsel. The commissioners, after hearing the evidence and argument, came into court and propounded to the court the following questions:

"*First.* If an overhead crossing is decided upon, can commissioners require defendants to pay any part of the cost of the viaduct?"

"*Second.* Can commissioners decide upon a grade crossing for a given time and thereafter an overhead crossing?"

After the court had received and read the questions, the defendants' counsel requested the court to answer both questions in the negative, and the court, at the request of the defendants, did give instructions to the commissioners, in effect, answering both of said

questions in the negative.

Defendants then asked certain other instructions, which were rufused.   They are as follows:

"The court instructs the commissioners that they have full powers to require an overhead crossing.

"The court instructs the commissioners that they must provide for such a crossing as will not materially interfere with the uses to which, by law, the defendants are authorized to put their railroad.

"If you believe that by reason of the grades of the Kansas City and Suburban Railway west of the place of crossing named in the petition the engines and cars of plaintiff could not be operated at a grade crossing without incurring danger not incident to ordinary railroad crossings, and that such a crossing, in your opinion, would be peculiarly dangerous to life and property, then you cannot allow plaintiff a grade crossing."

The commissioners filed their report on June 25, 1890, and thereby fixed grade crossings and allowed compensation aggregating four thousand, two hundred dollars ($4,200), which amount the plaintiff deposited with the circuit clerk on the same day.

The defendants filed their exceptions to the report of the commissioners on June 28, 1890.   These exceptions as filed stated thirteen alleged reasons why the report should be set aside.   The tenth reason assigned was on the alleged ground that the compensation was inadequate.   The others in the main set up that the crossing was dangerous and that it would so materially interfere with the use and operation of defendant's railroad as to practically destroy their property and franchises.   The appellants now complain that they never had a hearing by the court on the questions as to the danger of the crossing and as to the effect it would have upon the use of their property.

Vol. 118—39

After the exception to the report of commissioners was filed the court heard evidence on all of the exceptions. The court overruled the exceptions which went to the dangerous character of the crossing, and its interference with the use to which defendants had the right to put their property, and approved the report of the commissioners as to the point and manner of crossing and awarded the defendant a jury trial as to the amount of their damages. The defendants then filed a motion for a new trial on their exceptions, which was overruled, and they saved their exceptions.

A few weeks after the filing of the exceptions to the commissioners' report, to-wit, on the twenty-third of July, 1890, and just before the court proceeded to hear evidence on said exceptions, the defendants filed an application for a change of venue from the county, alleging as the sole ground therefor that the plaintiff "had an undue influence over the inhabitants of Jackson county." The plaintiff objected to changing the venue for trying the exceptions to the report of the commissioners, but conceded that the defendants were entitled under their application to a change of venue for a jury trial as to the amount of compensation. The court declined to pass on the application until after it had passed on the exceptions; then after the exceptions to the report had been overruled as to the point and manner of crossing, it awarded the change of venue to Clay county for trial by jury as to the amount of compensation.

After the transcript of the proceedings of the Jackson county circuit court had been filed in the circuit court of Clay county the defendants filed a motion in the Clay circuit court asking that the order confirming the report of the commissioners as to the point and manner of crossing be set aside and held for naught, and that the whole report be set aside and a

trial by jury had upon both the point and manner of crossing and the amount of compensation. This motion was overruled by the court and defendants saved their exceptions. A trial was then had before a jury to determine the amount of compensation to be made by the petitioner to the defendants, which under the evidence and instructions of the court resulted in a verdict assessing the damages for the Gillis street crossing at $7,000 and the Blue river crossing at $300. The defendants in proper time filed their motions for new trial and in arrest of judgment, which were overruled, and they appealed.

The first point urged upon the attention of this court is the action of the court below in appointing commissioners, against the objections of the defendants, predicated on the ground that the crossing at Gillis street in the manner proposed in the petition would materially interfere with the use of the railroad and property of defendants, and in denying them a hearing on this question. Section 2741, Revised Statutes, 1889, relied on by defendants in support of this contention provides that: "In case the lands sought to be appropriated are held by any corporation, the right to appropriate the same by a railroad, telephone or telegraph company shall be limited to such use as shall not materially interfere with the uses to which, by law, the corporation holding the same is authorized to put said lines. Where no agreement can be made between the parties, the mode of assessing the damages provided heretofore, as to private persons, shall be adopted; and if the lands to be appropriated lie in more than one county, an application may be made in any one county in which any of the lands lie, and the damages shall be assessed as to all the lands of the defendant corporation along the whole line, in one proceeding."

Defendants argue that as the section of the statute imposed a limitation, on the right to appropriate, it presented a question for the court to decide before the appointment of the commissioners upon which they requested a hearing, which was denied. This statute has no reference whatever to railroad crossings which are controlled absolutely by section 13, article 12, of the state constitution. It is as follows: "* * * Every railroad company shall have the right, with its road, to intersect, connect with or cross any other railroad. * * *" Section 2543, Revised Statutes, 1889, expressly authorizes any railroad to cross, intersect, join and unite its railroad with any other railroad before constructed at any point in its route, and upon the grounds of such other railroad company, with the necessary turn-outs, sidings and switches, and other conveniences, in furtherance of the objects of its connections; and every company whose railroad is or hereafter shall be intersected by any new railroad, shall unite with the owners of such new road in forming such intersections and connections and grant the facilities aforesaid; and if the two corporations cannot agree upon the amount of compensation to be made therefor, or the points and manner of such crossing and connections the same shall be ascertained and determined by commissioners to be appointed by the court, as is provided * * * for the condemnation of lands for railroad purposes."

It will be observed that nothing is said, nor is there any reference made to railroad crossings, in the section of the statute relied on by defendants, while the constitution and section 2543, Revised Statutes, 1889, in express terms provide for such crossings and the manner and means, as well as for the ascertainment of the damages, which would seem to be exclusive. Section 2741, Revised Statutes, 1889, *supra*, was not passed

upon nor adverted to in the case of *Railroad v. Railroad*, 94 Mo. 536, which has been cited by defendants in their brief. The rights of defendants in building their road and the acquisition of their right of way and switch grounds were by no means exclusive. They accepted their charter and franchises, and own and use their tracks, subject to the power of the state to authorize the construction of other railroads across their tracks whenever the public welfare may require; neither priority in the date of one charter over another, nor the prior location and construction of the one road over the other affects this right. *Railroad v. Railroad*, 30 Ohio St. 604; *Railroad v. Railroad*, 108 Ill. 265; *Railroad v. Railroad*, 97 Ill. 506; *Railroad v. Railroad*, 97 Mo. 457; *Hannibal v. Railroad*, 49 Mo. 480.

While plaintiff had the right to build its road across the defendants' tracks, it had no right to appropriate to its own use the exclusive possession of defendants' tracks or to deprive them of their use.

Under the petition and answer there was no question of a judicial character raised to be passed upon by the court, the only questions being as to the manner and mode of crossing, and the compensation required, which by the very terms of the statute were to be determined by the commissioners. And, even if there had been, there was no error committed in refusing to pass on it before the commissioners were appointed as this might have been done at any time before the case was submitted to the jury. *Railroad v. Railroad*, 94 Mo. 536. It is true as was held in that case if there were any valid objections to the condemnation in point of fact which did not appear upon the face of the petition they could have been set up as a defense by answer, and evidence heard thereon, at some time before the case was submitted to the jury.

It was held by this court in the case of *Rail-*

*road v. Railroad*, 110 Mo. 510, in which was involved the right of one railroad company to cross the right of way of the other, that the one had no right conferred upon it to acquire the exclusive use of any part or portion of the right of way of the other; but that it had the power to cross the right of way; the compensation to be paid therefor, and the point and manner of crossing, to be fixed by the commissioners, if the parties could not agree, and that the condition attached over and above payment of compensation was that the point and manner should be fixed. Until this was done it could not be told what compensation should be awarded. And that the statute was designed to confer upon the commissioners power to provide for all those details of construction and operation which would ordinarily be provided by a contract between the companies themselves had they been able to agree.

Defendants complain that the court erred in refusing to instruct the commissioners that a material interference by the petitioner with the use by defendants of their railroad was not authorized. And that they must provide for such a crossing as would not create such an interference. This question has already been virtually disposed of, but even if it had not been we are of the opinion that as the commissioners were the sole judges of this matter, and as the order of appointing them recites that they "are appointed commissioners to fix and determine the points and manner of crossing, and connections sought to be made by the petitioner with and over defendants' tracks and right of way to hear evidence," etc., no further instructions were necessary. Moreover, the record discloses the fact that defendants were heard on this matter both by the commissioners and by the court on their motion to set aside the report of the commissioners which was subject to review and approval, or to be set aside by the court as it felt

authorized to do.

Defendant's contention that the surface crossing at Gillis street would materially interfere with the use to which defendants' property had been lawfully appropriated; that it interfered materially with the use of the adjacent lands for switching purposes and that it necessitated the entire abandonment of a portion of the switch yards of defendants and the removal of the switches east of the crossing, does not seem to be borne out by the evidence introduced on the exceptions to the commissioners' report.

This crossing is almost entirely within the limits of Gillis street and is near the western end of a storage yard of defendant. Two main tracks and three side tracks are crossed by plaintiff's road. That part of the crossing which is within the street does not interfere with defendants' storage cars, because they could not use it for storage purposes. The evidence shows that the storage capacity of one side track was reduced sixty feet, another seventy feet, and the third sixty feet and that the storage yards lie almost entirely east of the crossing, and extend about three-fourths of a mile in that direction. This, even when added to the danger of collisions, could scarcely be considered as a serious interference with defendants' franchise.

If the result of this proceeding was to deprive defendants of the use of any of their property or franchises, and to appropriate it to the exclusive use of plaintiff it would be without authority of law and could not be done. As was said in the *Appeal of Pittsburgh Junction Railroad Co.*, 122 Pa. St. 511, "the principle is well settled that 'the lands or right of way occupied by one railroad company for its corporate purposes cannot be taken as a right of way by another railroad company, except for mere crossings, and then only for crossing purposes, and not for exclusive occupancy.' " *Penn-*

*sylvania Railroad Company's Appeal*, 93 Pa. St. 150; *Cake v. Railroad*, 87 Pa. St. 307; *Railroad v. Railroad*, 118 Mass. 391; *Railroad v. Railroad*, 124 Mass. 368; *Railroad v. Williamson*, 91 N. Y. 552; *Union Depot v. St. Paul*, 30 Minn. 359; *Central City Horn Railroad v. Railroad*, 31 Ill. 523; *Hicock v. Hine*, 23 Ohio St. 523.

The action of the court is assailed because of the refusal to instruct the commissioners that they had the power to require an overhead crossing, and in refusing to instruct them that if they believed that by reason of the grades of the petitioner's road west of the place of crossing, its cars and engines could not be operated at a grade crossing without incurring danger not incident to ordinary railroad crossings and that such crossings would be peculiarly dangerous to life and property, they could not allow a grade crossing.

No instructions in this case were necessary other than those contained in the order appointing the commissioners, as they were thereby instructed that they were to determine all questions pertaining to the crossing. And especially after the court, at the request of the defendants, had instructed the commissioners that if an overhead crossing were decided upon that they could not require defendants to pay any part of the cost of the viaduct, nor could they decide upon a grade crossing for a given time and thereafter an overhead crossing—it was certainly not error in refusing other instructions directly to the converse. While the instructions given were unquestionably erroneous, defendants should not be heard to complain of an error committed at their own request.

But the law makes no provision for instructions under such circumstances, and in cases of this kind and when not required, it is not error to refuse them when asked. Under our system of practice it is only when by statutory enactment instructions are required to be

given, that it is error to refuse to do so, however correctly they may present the law, and however much they may be authorized by the evidence.

The next point for consideration is as to whether or not defendants were entitled to have the report of the commissioners set aside as a whole and the question as to the mode and manner of the crossing as well as the compensation determined by a jury, as a matter of right. Section 4, article 12 of the constitution of the state provides that, " * * * the right of trial by jury shall be held inviolate in all trials of claims for compensation, when in the exercise of such right of eminent domain, any incorporated company shall be interested either for or against the exercise of said right." At common law, and independent of the constitution and statute, no such right existed in a condemnation proceeding and neither party had a right to a jury trial in such cases. Proffatt on Jury Trial, secs. 84, 87, 88, 104; Mills on Eminent Domain, secs. 91, 253, 254; *Railroad v. Congregation,* 53 Pa. St. 449; *People v. Smith,* 21 N. Y. 597; *Ames v. Railroad,* 21 Minn. 241; *Railroad v. Ferris,* 26 Tex. 588; *Steamboat Co. v. Roberts,* 48 Am. Dec. 190. And no such right exists in in this state except by virtue of the provisions of the constitution, or statutory enactment.

This right was first engrafted into the constitution of this state in 1875, and it was then in express terms confined to compensation for the property taken, and all damages incident thereto, and it is but fair and reasonable to presume, had it been intended by the framers of that instrument to include all the issues arising in such cases, that it would not have named one only.

Section 2738 provides that if a new appraisement be ordered, "such new appraisement shall, at the request of either party, be made by a jury." This statute does not give the right of trial by jury on any

SUPREME COURT OF MISSOURI,

question involved in a condemnation case, except on the question of damages to be allowed. It was not necessary for the court to make an order setting aside the report of the commissioners in order to entitle defendants to a jury trial on the question of compensation, as either party was entitled to such a trial as a matter of right, which was guaranteed to them by the fundamental law of the state. The court had the right to set aside the report of the commissioners as to the compensation or damages allowed, and approve it, as it did do, as to the mode and manner of crossing, without in any manner infringing on the rights of defendants to a jury trial on the question of compensation. In the absence of any provision in the constitution as to how the point and manner of crossing should be determined, and there being no inhibition against it, the legislature clearly had the right to provide, as it did, that it should be determined by three disinterested commissioners, freeholders, residents of the county where the property sought to be condemned was situated.

The record shows that an application had been filed by defendants for a change of venue from Jackson county, because of the undue influence of plaintiff over the inhabitants of that county, which necessitated, as a matter of course, sending the case to some other county, there to be tried by a jury of the citizens of the county to which the venue was changed while only citizens of Jackson county were qualified to act as commissioners, and upon a trial of all the issues before a jury, would have presented the anomaly of trying before a jury, citizens of one county, issues of which a commission composed of citizens of the county where the property was located were the sole and only judges. Thus it seems clear that the legislature having provided that the mode and manner of crossing shall be determined by the commissioners, and that a jury may be

demanded to fix the compensation, there was no error committed in approving the report of the commissioners as to the mode and manner of crossing.

For the same reasons the circuit court of Clay county did not err in refusing to submit the whole case, both as to the mode and manner of crossing and the compensation to be awarded defendants, to a jury. Defendants were accorded a jury trial on the question of compensation and upon that issue alone were they entitled to a trial before a jury.

The next question to be determined is with regard to the action of the court in approving the report of the commissioners as to the place and manner of crossing after the application for the change of venue had been submitted. The motion for change of venue was filed after the commissioners had been appointed and made their report, and after defendants had filed exceptions thereto, and was predicated on the ground of the alleged undue influence of plaintiff over the inhabitants of the county. That ordinarily a change of venue should be granted as soon as the application is made is true, as abundantly shown by the authorities cited by counsel for defendants in their brief. *Dowling v. Allen*, 88 Mo. 293. But while such is the case the rule announced by this court is that the court in which an application for change of venue is made does not lose jurisdiction of the same by the mere fact of filing the application, but that it is the order granting the change that divests the court of its jurisdiction. *In re Whitson's Estate*, 89 Mo. 58; *State v. Noland*, 111 Mo. 473; *Colvin v. Six*, 79 Mo. 198; section 2264, Revised Statue 1889. The application for change of venue not being against the judge by whom the exceptions to the report of the commissioners must have been and were passed upon, there was no reason why he should not act in the matter, as is shown by the authorities cited

on this point. And the court committed no error in passing upon, and in overruling it.

But, even though the court committed error in passing upon and overruling the exceptions after the application for change of venue was filed; yet, after the case was sent to the circuit court of Clay county, defendants filed their motion to set aside the order of the Jackson circuit court approving the commissioners' report as to the mode and manner of crossing, and also to set aside the whole report, which motion was as to the point and manner of crossing overruled, and defendants saved their exceptions. By this course they lost nothing by reason of the action of the Jackson court in passing upon, and in overruling the motion, after the application for a change of venue had been filed. As the result was, they had the benefit, of the rulings of two different courts on the same proposition, and are in no position, to complain, as the *finale* was the same as it would have been had the change of venue been granted immediately upon filing the application.

The court excluded certain evidence offered by defendants as to the dangerous character of the grade crossing at Gillis street and its effect on the value of defendant's road. It is contended by counsel for defendants that this evidence was competent as affecting the value of defendant's property. And that the court also erred in refusing to submit this question as an element of damage to the jury as requested in the third instruction asked by defendants; and in telling them that they could not consider it, in the third instruction given by the court of its own motion. No particular instance is suggested in defendant's brief wherein any such ruling occurs, and it is somewhat difficult to determine, from the immense record in this case, to what evidence reference is made. If the objec-

tion is to be understood as applying to the opinion of witnesses as to the probabilities of collisions and accidents at the crossing, such evidence was clearly inadmissible for any purpose, and too remote, indefinite and uncertain.

The character of the grades and the effect of the crossing on the value of defendant's road and franchises, were proper subjects for consideration by the jury in estimating the compensation to which defendants were entitled, and with reference to these matters there was a vast amount of evidence on either side. The instruction complained of told the jury that no allowance could be made the defendant for any delay, inconvenience or damage arising from the railroad crossing in that street, and was evidently the law.

Complaint is also made of the action of the court in its refusal of instruction number five, asked by defendant, presenting a contrary view. As to what may be taken into consideration in estimating the damages in cases for condemnation of land, franchises and railroad tracks for the construction of railroads and railroad crossings, the authorities are not altogether in harmony, but we think the better rule is as laid down by Mills in his work on Eminent Domain, section 44a, which is as follows: "The railroad corporation, across whose road another railroad or highway is laid out, has the like right as all individuals or bodies corporate, owning lands or easements, to recover damages for the injury occasioned to its title or right in the land occupied by its road, taking into consideration any fences or structures on the land, or changes in its surface absolutely required by law, or in fact necessary to be made by the corporation injured, in order to accommodate its own land to the new condition. But it is not entitled to damages for the interruption and inconvenience occasioned to its business; nor for the increased

liability to damages from accidents; nor for increased expense for ringing the bell; nor for the risk of being ordered by the county commissioners, when in their judgment the safety and convenience of the public may require it, to provide additional safeguards for travelers crossing the railroad; nor for the expenses of maintaining a flagman, alleged to be necessary to guard against the greater liability to accidents occasioned by the obstruction of the view along its railroad, at the crossing of a highway, by means of the abutments of the new railroad of the other corporation. The condemnation of such a right of crossing is for the benefit of the public. The compensation made should cover all loss and damage which may reasonably be expected. In estimating the amount of this compensation, in addition to the value of the land taken, the inconvenience caused by the operation of the second road, the increased difficulty of access to the first road and the impairment of its capacity for doing business will be considered. Evidence of the amount of traffic is admissible to show the extent of the use. No compensation will be made for the necessity of stopping trains at the crossing, nor for reduction of hauling capacity, nor for increased danger of accidents." *Railroad v. Railroad*, 105 Ill. 110; *Railroad v. Railroad*, 105 Ill. 388; *Railroad v. Railroad*, 121 Mass. 124; *Railroad v. Railroad*, 30 Ohio St. 604.

Both parties had an equal right to the use of the street and no allowance could be made to defendant for any delay or inconvenience arising from the crossing in the street. The defendants accepted their charter subject to the sovereign right of the state to grant other corporations equal privileges to construct other railroads and highways across its tracks, they being responsible at the same time for any damages occasioned thereby, and flowing directly from any

injury to its property, but possibilities or probabilities of collisions were not elements of damage to be considered by the jury, because too remote and uncertain of ascertainment.

The court first excluded from the jury evidence offered by defendants relating to an interlocutory switch, and that such a device would be necessary and proper in order to place their road at this point in as safe condition as the nature of the case would permit, and as it was before the crossing was constructed, and this, it is urged, was also error. Subsequently, however, the court reconsidered its rulings, and not only permitted defendants to make the proof, but in its fifth instruction instructed the jury with reference thereto. It would seem that defendants are not in position to complain on that ground.

There was no error committed in excluding the evidence as to the success with which the petitioner had been able to operate its trains on the hill leading down to Gillis street crossing, as it is difficult to see what bearing it had on the issues being tried before the jury.

We think that the action of the court was correct in excluding all evidence, and by instructions all the elements of damage arising from the stopping of trains at the crossing in compliance with the ordinance of Kansas City requiring all trains to come to a full stop when within seventy-five feet of the approach of every railroad crossing. The defendant's rights acquired under their charter were subject to all reasonable rules and regulations of a public character, that were then in force, or that might thereafter be adopted by the authorities of Kansas City, and as all railroads were required by ordinance when within seventy-five feet of every railroad crossing and about to cross the same with their cars and locomotives to stop, nothing could

be allowed them by way of compensation on account of the inconvenience of stopping and waiting whilst plaintiff's trains passed over the crossing in the street. *Railroad v. Railroad*, 97 Mo. 457; *Railroad v. Railroad*, 111 Mo. 666; Mills on Eminent Domain, sec. 44*a*; *Railroad v. Railroad*, 105 Ill. 110; *Railroad v. Railroad*, 105 Ill. 388; *Railroad v. Railroad*, 121 Mass. 124; *Railroad v. Railroad*, 30 Ohio St. 604.

For similar reasons the court committed no error in giving, of its own motion, the third instruction, and the second and sixth instructions given at the request of the petitioner, which, in effect, excluded from the consideration of the jury as elements of damage all delays and inconveniences caused by so much of the crossing as was situated within Gillis street, as such was what is understood to be "a loss without an injury." *Railroad v. Railroad*, 111 Mo. 666.

There does not seem to have been any evidence upon which to bottom defendants' instruction number 1, which was refused by the court, and which, in effect, proposed to submit to them for their consideration the question of the necessity of the abandonment and removal by defendants of a portion of their switch yards caused by the grade crossing at Gillis street, and for that reason it was rightfully refused. And the same may be said with respect to the action of the court in refusing the sixth instruction asked by defendants.

We have been unable to see any objection to the fourth instruction given by the court at the request of plaintiff.

Defendants contend that the court should have given the first instruction asked by them and which was refused, submitting to the jury the question of the necessity of the abandonment and removal of a portion of their switch yards caused by the grade crossing

Gillis street, and as an element of damage the loss of earning or business capacity sustained by the defendants' property by the interference with free access between different points of its road.   It has been seen that there was no evidence which could have justified the instruction on the first proposition, and if for any reason it was bad, there was no error in refusing it.

We come now to the consideration of the only remaining point urged upon the attention of this court, which was the action of the court below in refusing the fifth instruction asked by defendants, which is as follows:

"The court instructs the jury that the petitioner has no greater right to locate and construct and operate its railroad across the lands and tracks of the defendant than it has to locate, construct and operate the same across the lands of an individual.   And that just compensation must be paid for the taking and damaging of the property in the one case as in the other."

This instruction is a mere abstract proposition of law, and laid down no rule or guide whatever by which the jury could be aided in making their verdict.   There was nothing in the pleadings or evidence upon which to predicate it and the court did right in refusing it. *Fairgrieve v. Moberly*, 29 Mo. App. 141; *Schroeder v. Mason*, 25 Mo. App. 190; *Haegele v. Western Stove Co.* 29 Mo. App. 456; *Zwisler v. Storts*, 30 Mo. App. 164.

The court, in a very careful and well prepared set of instructions, covering every phase of the case, submitted the case to the jury, and we have been unable to discover any reversible error in the record, and think that the judgment should be affirmed.   It is so ordered.   All of this division concur.