HARRIETT L. MARR, Respondent, v. H. O. BUNKER et al., Appellants.

St. Louis Court of Appeals, February 25, 1902.

1. **Instructions: EVIDENCE: PLEADING.** Instructions should be predicated on the evidence and the pleadings, not on the pleadings alone where there is no evidence in support of their allegation.

2. ————: ————: **NEGLIGENCE.** In the case at bar, the instruction practically told the jury that if the fire originated on defendant's premises and they found the plant was negligently constructed or negligently used, they should find for the plaintiff. There is no connection whatever between the fire and the manner of the construction of defendant's plant. If the fire can be attributed to defendant's negligence it was in their failure to properly construct the pit where they burned the shavings or in their failure to put out the fire that was in the pit on the morning of the day of the conflagration, and the instruction should have confined the issue of negligence to the location, use, management and supervision of this pit.

Appeal from the Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND REMANDED.

*Henry D. Green* and *Lincoln & Lydy* for appellants.

(1) An allegation specifying the act constituting the injury and alleging that it was negligently done, is sufficient. Ravenscraft v. Railroad, 27 Mo. App. 617. (2) But, the real ground of complaint constituting the negligence, must be clearly and distinctly stated, and the acts which it is intended to be shown were negligently done should be set out with a reasonable degree of particularity and in some appro-

priate form of expression charged to have been negligently done. Jacquin v. Cable Co., 57 Mo. App. 320. (3) It is not enough to show that the defendants were guilty of negligence without showing in what respect they were negligent and how they became bound to use care to prevent injury to others. The petition ought to state the facts upon which the supposed duty is founded. Such duty arises out·of some relation existing at the time between the person injured and the defendants, which the complaint by the averment of facts should show. Ganhat v. Egerton, L. R., 2 C. P. 371. (4) The court erred in admitting, over defendants' objection, evidence as to the construction of the mill plant and arrangement of their lumber yards because: There is no allegation that it was the act of the defendants or any one for them; that it was negligently done, or that defendants knew of any defects therein, or that it was the cause of or contributed to plaintiff's injury. It is merely explanatory. So much surplusage. Negligent management and defective construction might each exist, but the cause of action can not be and is not attempted to be grounded on both. Plaintiff must stand on her attempted specific charges of negligence. Waldhier v. Railroad, 71 Mo. 514; Meyer v. Railroad, 64 Mo. 542; Gurley v. Railroad, 93 Mo. 445; Gutridge v. Railroad, 94 Mo. 468. And when specific negligence is charged, such general allegations do not admit of proof of negligence other than specifically stated. McManamee v. Railroad, 135 Mo. 440. (5) The most reliable criteria as to proximate cause is to ascertain whether any new cause has intervened between the facts accomplished and the alleged cause. If a new force or power has intervened, of itself sufficient to stand as the cause of the misfortune, the other must be considered as too remote. Kellogg v. Railroad, 26 Wis. 284; Railroad v. Witte, 68 Tex. 295. (6) The wind carrying the brand to plaintiff's roof was an intervening cause. Railroad v. Whitlock, 99 Ind. 16; Railroad v. Muthersbaugh, 71 Ill. 572; Stewart v. Hawley, 22 Barb. 619; Calkins v. Bar-

ger, 44 Barb. 424. (7) Knowledge of the danger and a failure to arrest it is negligence and should be taken from the jury. Buesching v. Gas Light Co., 73 Mo. 219. No recovery can be had when plaintiff could have put out the fire, and failed to make any effort to do so. Tilley v. Railroad. 49 Ark. 435; Railroad v. McClelland, 42 Ill. 355. (8) He who has the last clear chance, notwithstanding the negligence of the adverse party, is considered solely responsible for injuries resulting from his failure to exercise reasonable care. Picket v. Railroad, 30 L. R. A. 257; Thompson v. Salt Lake Rapid-Transit Co., 40 L. R. A. 172.

*Livingston & Burroughs* for respondent.

(1) The petition clearly states a good cause of action. It would stand the test of sufficiency on demurrer. In an action for damages caused by fire, it is not necessary to charge particularly the specific acts constituting the negligence. An allegation of negligence in general terms, or at least in language which clearly indicates that negligence was intended to be charged, is sufficient. 9 Ency. Plead. and Prac., pp. 1-2, and cases cited. Palmer v. Railroad, 76 Mo. 217; Mack v. Railroad, 77 Mo. 232; Schneider v. Railroad, 75 Mo. 295; Schultz v. Moon, 33 Mo. App. 329. (2) But even if any of the objections urged against its sufficiency were valid, it is too late to raise them after verdict. Oglesby v. Railroad, 150 Mo. 137; Cobb v. Railroad, 149 Mo. 135; Cannon v. Gas Co., 145 Mo. 502; Conrad v. De Mountcourt, 138 Mo. 311; Young v. Iron Co., 103 Mo. 324; Benham v. Taylor, 66 Mo. App. 308.

BLAND, P. J.—Omitting caption, the petition is as follows:

"Plaintiff, for cause of action, states that she is, and was at the time hereinafter mentioned, the owner of certain premises situated in the county of Howell and State of Missouri,

described as follows, to-wit: Lots 1 and 2, in block 10, of Old Mountain View, being the premises on which the plaintiff then resided.

"Plaintiff further states that at the times hereinafter mentioned, the defendants composed the firm known as Bunker Brothers, doing a lumber business in the said town of Mountain View, Missouri. That the said firm of Bunker Brothers owned and operated a planing mill and also owned and kept considerable lumber stacked on their yards and about their planing mill. That said planing mill plant and lumber yards owned, run and operated by defendants, were situated on a lot in close proximity to the said premises belonging to plaintiff. Plaintiff further states that the said planing mill plant was so defective and improperly built and constructed, and that the lumber stacked on defendants' yards and their shaving pile were in such close proximity to their machinery and their fires, which were kept burning on the yards of defendants, and that said mill plant and lumber yards were so carelessly, negligently and unskillfully managed by the agents, servants and employees of defendants in charge thereof, that fire broke out on the premises of defendants on the ———— day of ——, 1900, creating a conflagration in their mill plant and on their lumber yards; and that through the negligence and carelessness of defendants as aforesaid, the fire escaped from the premises of defendants during said conflagration and set fire to the residence of plaintiff situated on the premises above described, and totally consumed the same, to plaintiff's damage in the sum of $700. And said fire further consumed and damaged furniture stored in the said residence and belonging to plaintiff, to plaintiff's damage in the sum of $150. And the said fire further consumed, killed and destroyed fruit trees and shade trees and shrubbery, planted and growing in said plaintiff's yard, to plaintiff's damage in the sum of $150. Wherefore plaintiff says she is damaged in the

total sum of $1,000, for which she asks judgment, together with the costs of this suit."

The following is the answer:

"Now come the defendants in the above-entitled cause, and for answer to plaintiff's petition filed herein admit that at the times mentioned in said petition they composed the firm of Bunker Brothers. Admit that their lumber yard and mill were destroyed by fire at the time alleged in said petition, but aver that said fire was kindled through no fault, negligence or carelessness of these defendants, their agents or employees, but by accident; and in consequence of high winds then prevailing the fire got beyond the control of these defendants. And deny each and every allegation in plaintiff's petition contained, except what are herein specifically admitted.

"Defendants, for further defense, say, that any property of plaintiff so destroyed by fire, if it was so destroyed, was destroyed through the neglect, carelessness and fault of said plaintiff, and that by reasonable care and diligence plaintiff might have avoided any damage to her property."

The issues were submitted to a jury who returned a verdict for plaintiff placing her damages at six hundred and fifty dollars. Timely motions for new trial and in arrest were filed and overruled, whereupon defendant appealed.

H. O. Bunker having died pending the appeal, the cause, as to him, has been dismissed in this court and the action is now against S. J. Bunker alone.

In 1900, the Bunkers owned and operated a planing mill at Mountain View station, on the Current River railroad, Howell county. The dry kiln and lumber sheds were near the railroad track. At the side of the dry kiln was an inclosed shed into which was blown shavings from the planers in the mill, which shavings were used for the purpose of heating the furnaces in the dry kiln. When not needed for this purpose, by means of a cutoff, the shavings were carried fifty feet east

of the dry kiln and deposited into a sink in the ground from twenty to twenty-four inches deep, and there burned.

On a Sunday in the summer of 1900, and during a protracted dry and heated season, fire started in the shaving house and consumed the mill plant and a large amount of lumber in the yards. A fire brand or spark was blown from the nearest stack of lumber, a distance of three hundred and forty feet, onto the roof of plaintiff's residence, where it spread and consumed the house, some of her household goods and destroyed fruit trees growing in the yard and her yard fences.

The machinery was not in operation on the day of the fire and there was no fire in the engine house. Shavings had been burned in the pit the day previous and about nine o'clock on the morning of the fire some fire was discovered in the pit. There was a considerable wind blowing from the conflagration in the direction of plaintiff's residence and other houses in her immediate neighborhood.

On the part of the plaintiff there is slight evidence that there was fire in the pit at the time the shavings house took fire and some evidence that there was fire there after the conflagration was over. The theory of the plaintiff's case is that there was fire in the pit, which was fifty feet away from the shavings house, and that this fire was carried by the wind to the shavings house.

The evidence further is that plaintiff had no water on her premises; that if she had had water it would have been an easy matter to have saved her building.

On the part of the defendants the evidence tends to prove that defendants kept a watchman on their premises both day and night; that at six o'clock in the morning the day watchman went on duty and that about nine o'clock he went to the shavings pit and stirred up the slumbering shavings and then thoroughly saturated the pit and the ground around it with water and he is very positive in his evidence that he put out all the fire. That at about eleven o'clock, and just after a

train had passed, fire was discovered on the roof of the shavings house; that the superintendent went up and with a bucket or two of water put the fire out; that it did not burn through the roof and he is positive that he put out the fire.   At noon the superintendent, who had been at work inside of the plant, and the watchman, went to dinner.   While they were at dinner fire broke out in the shavings house.   The people in the immediate vicinity, the employees of the defendants, and one of the defendants, who was present, made every possible effort to extinguish the fire but on account of the high wind and the intense heat they were unable to do so.   That the defendants kept barrels of water near its dry kiln and shavings house; that there was plenty of water in the millpond and that they kept Babcock fire extinguishers, all of which were used to extinguish the fire but were wholly unavailing.

The evidence tends further to show that two or three residences, nearer to the defendants' lumber piles and plant than plaintiff's, were saved by having a man on the roof with a bucket of water to extinguish the sparks of fire as they would fall upon the buildings; that a man was on plaintiff's house when the spark or brand which started the fire fell upon the roof and called for a bucket of water; that it could have been extinguished with a gallon of water but that no effort was made to furnish the water; that there was a cistern containing water on an adjoining block not more than thirty steps away; that neither plaintiff nor her two grown sons present made any effort to get water or took any steps to prevent the house from burning.   Plaintiff had a well on her premises but there was no water in it and the excuse given by her for not having water was that there was none to be gotten.

At the instance of plaintiff the court gave the following instructions:

"1.   The court instructs the jury that if you find and believe from the evidence that at the time and place mentioned

in plaintiff's petition, her residence, household goods, fruit trees, shade trees and shrubbery were destroyed by fire, and that said fire originated on the premises of the defendants, through the carelessness and negligence of defendants, their agents, servants or employees in erecting and building their machinery or appliances, or negligent and careless arrangement of their mill plant, lumber yards and fires, and that such fire so originated was the direct and proximate cause of the destruction of plaintiff's property, then you should find for the plaintiff and assess her damages at the valuation of her property so destroyed.

"2. The court instructs the jury that while defendants had the right to use fire on their premises, yet they were required under the law to so use it that it would not endanger the property of others, except that it escape through some accident not reasonably to be anticipated. That in order to avoid injury to others it was the duty of defendants to so construct their buildings and machinery, and to handle and use the same so that they would be reasonably safe from igniting and catching fire to the danger of plaintiff's property. And that if you believe from the evidence that defendants or their servants or employees were careless or negligent in the construction or use of their buildings and machinery, or in using or keeping fire therein, and that by reason of such carelessness and negligence plaintiff's property was burned, then you should find for plaintiff."

On the part of the defendant the court gave the following:

"If you find from the evidence that defendants used due diligence in firing their shavings, and, notwithstanding, the fire escaped and burned plaintiff's property, without the least fault or neglect on part of the defendants, then your verdict will be for defendants.

"The court instructs the jury that the negligence of plaintiff, which will prevent a recovery, is nothing more than the

absence of proper care, such care as a person of ordinary prudence would exercise under similar circumstances.

"The court instructs the jury, that if you find from the evidence that the injury to plaintiff's property would not usually or naturally follow from the act of defendants in burning their shavings, but was brought about by high winds which sprang up after defendants had kindled their fire on their yards, then you will find the proximate cause of the injury was not the act of defendants, and your verdict should be for defendants.

"The court instructs the jury, that if you find that plaintiff, by reasonable diligence and exertion might have avoided the injury to her property, even though you should find that defendants were negligent in burning their shavings, your verdict must be for defendants.

"The court instructs the jury that the burden of proof in this cause is upon the plaintiff, and before she can recover any damages it devolves upon her to show, by a greater weight of the evidence, that the fire which destroyed and damaged her property originated in defendant's mill or yard through the negligence and carelessness of defendants or their agents, servants or employees.

"The court instructs the jury that unless it is shown by a preponderance of the evidence that the fire, which destroyed plaintiff's property, was created by defendants or their servants or employees, then you will find that said fire was accidental, and in order that plaintiff may recover, you must further find that defendants failed to use ordinary care and prudence under the circumstances in their efforts to subdue the flames after they were discovered, and that plaintiff was not negligent in her efforts to save her property. Preponderance of the evidence means the greater weight thereof.

"The court instructs the jury that defendants had the right, in the exercise of ordinary care and prudence (such care and prudence as defined in other instructions), to set out fire

on their own premises to burn up the trash and shavings accumulated thereon; and if the jury believe and find from the evidence that the defendants did set fire for this purpose in their yards adjacent to plaintiff's property and defendants' lumber, without any intention on their part of setting fire to their said lumber, then the burden of proof is on plaintiff, and she must show by a preponderance of testimony that said damage to plaintiff's property resulted from the fire so set by said defendants, and also from the lack of ordinary care and caution, in time, place or manner of setting out said fire upon the part of defendants, under all circumstances, and the mere fact that plaintiff's property was destroyed by the fire set by defendants does not of itself prove negligence.

"The court instructs the jury that negligence consists in doing something which a reasonably prudent person would not have done under the circumstances, or in failing to do something which a reasonably prudent person under the circumstances would have done."

I. One of plaintiff's witnesses testified that the defendant's plant was negligently constructed, that the place for burning shavings was dangerously near the dry kiln and shavings house, and that the pit had filled up even with the surface and the shaving house, and that the lumber yard was littered with shavings.

Instruction number one given for plaintiff told the jury, in effect, that if the fire originated on defendants' premises through negligence in erecting and building their machinery or appliances or from the negligent arrangement of their mill plant, lumber yard and fires and that the fire was the proximate cause of plaintiff's loss they should find for plaintiff.

The second instruction told the jury that if they believed defendants were negligent in the construction or use of their buildings or machinery, or in using or keeping fire therein, and that by reason of such negligence plaintiff's property was burned they should find for plaintiff.

The uncontradicted evidence is that the plaintiff was not using its buildings or machinery on the day of the fire (it being Sunday); that the only fire, if any, on defendants' premises on that occasion was in the pit used the day previous for burning shavings. The construction and use of the buildings and machinery had nothing whatever to do with the origin of the fire, yet the jury were told that if they (the buildings and machinery) were negligently constructed or used, or if the defendants were negligent in keeping fire therein, they are liable. Instructions should be predicated on the evidence and the pleadings, not on the pleadings alone where there is no evidence in support of their allegations. Railroad v. Railroad, 118 Mo. 599; Tyler v. Hall, 106 Mo. 313; Bergeman v. Railroad, 104 Mo. 77; Paddock v. Somer, 102 Mo. 226.

The instructions practically told the jury that if the fire originated on defendants' premises and they found the plant was negligently constructed or negligently used, they should find for the plaintiff. There is no connection whatever between the fire and the manner of the construction of defendants' plant. If the fire can be attributed to defendants' negligence, it was in their failure to properly construct the pit where they burned the shavings or in their failure to put out the fire that was in the pit on the morning of the day of the conflagration, and the instruction should have confined the issue of negligence to the location, use, management and supervision of this pit.

II. While the allegations of the petition, that the shavings pit was kept burning on the yards of defendant; that the mill plant and lumber yards were carelessly, negligently and unskillfully managed; that fire broke out on the premises causing a conflagration in the mill plant and lumber yard from which negligence of defendants the fire escaped to plaintiff's premises, do not specifically locate the origin of the fire nor name the specific negligence from which it was allowed to start, yet it is sufficient to support the judgment after verdict.

The error in giving instructions numbered one and two. for the plaintiff is not cured by those given for the defendant. We think the error in the two instructions had a tendency to mislead and confuse the jury and were therefore prejudicial.

The judgment is reversed and the cause remanded. *Barclay*, and *Goode, JJ.*, concur.