Crumley v. Western Tie and Timber Co.

## W. D. CRUMLEY, Respondent, v. WESTERN TIE AND TIMBER COMPANY, Appellant.

### Springfield Court of Appeals, June 6, 1910.

1. **VENDOR AND PURCHASER: Acceptance and Delivery: Instructions.** In a suit to recover the market value of ties under a verbal contract, which plaintiff claimed to have made with defendant's agent, for the making and delivery of the ties to the defendant at the city of Doniphan, the evidence showed that the ties, while still in the raft moored to the river bank at Doniphan, were washed away by a flood and lost. There was no evidence that the ties had ever been delivered to or accepted, counted or inspected by the defendant. Many witnesses for defendant testified that it was the custom at Doniphan for the seller to draw the ties from the water and place them in the tie yard where they could be inspected and counted. *Held,* that it was error for the court to give an instruction submitting the question of acceptance of the ties by the defendant.

2. ————: ————: **Sale of Ties: Count and Inspection.** Under a contract for the purchase of ties which were to be delivered by the seller, it was held that a delivery under the necessities of the case would contemplate counting and inspecting, and that therefore a delivery of the ties was not fulfilled by the offer of a raft in a river where counting or inspecting could not be had.

3. ————: ———— **Place of Delivery.** Where, under a contract of sale, certain chattels were to be delivered in a certain town, with no more specific direction or agreement as to the place of delivery, the purchaser has a right to designate the place in the town where delivery shall be made.

4. **INSTRUCTIONS: Must be Based on Evidence.** It is reversible error to give a case to the jury upon an instructed hypothesis which is not supported by the evidence.

Appeal from Ripley Circuit Court.—*Hon. J. C. Sheppard,* Judge.

REVERSED AND REMANDED.

*Charles O. Borth* and *Block & Sullivan* for appellant.

(1)  Respondent, having declared on a special contract, can recover only on proving  full  performance thereof.  Warson v. McElroy, 33 Mo. App. 553; Lumber Co. v. Snyder, 65 Mo. App. 568; Hayes v. Bunch, 91 Mo. App. 467; Mohney v. Rudd, 40 Mo. App. 99; West v. Freeman, 76 Mo. App. 96.  (2)  A litigant is bound by the averments of his pleadings.  Budd v. Hoffheimer, 52 Mo. 303; Bank v. Westlake, 21 Mo. App. 573; Matson v. Frasier, 48 Mo. App. 302.  (3)  Under a contract to deliver at Doniphan appellant, and not respondent, had the right to select the particular place of delivery. Stillwell v. Bowling, 36 Mo. 311; Morel v. Stearnes, 88 N. Y. Supp. 416.  (4)  A contract with reference to a particular trade in a particular locality is to be interpreted in the light of the usages of the trade in  that locality. Soutier v. Kellerman, 18 Mo. 512; Evans v. Western Co., 118 Mo. 553; Heyworth v. Miller, 174 Mo. 185; Snoqualmi v. Moynihan, 179 Mo. 643; Lillard v. Kentucky Co., 134 Fed. 168; Landry v. Adaline Co., 52 La. Ann. 258, 26 So. 824; Gehl v. Milwaukee Co., 105 Wis. 573, 81 N. W. 666; Williams v. Adams, 3 Sneed (Tenn.) 359.  (5)  It is error to give instructions submitting to the jury issues of fact of which there is no evidence. Waddingham v. Gamble, 4 Mo. 456; Bergman v. Railroad, 104 Mo. 90; Heinzle v. Railway, 182 Mo. 599; Pandjeris v. Hartman, 196 Mo. 547; Marr v. Bunker, 91 Mo. App. 661; Stephen v. Metzger, 95 Mo. App. 626; Meily v. Railroad, 107 Mo. App. 466; Chambers v. Railroad, 111 Mo. App. 611.

*Chas. B. Butler* for respondent.

NIXON, P. J.—This was a suit to recover the market value of 423 railroad ties alleged to have been de-

livered by plaintiff to defendant at Doniphan, Missouri, pursuant to the terms of a verbal contract theretofore entered into between plaintiff and defendant's agent, J. H. Murray. The petition alleged that by the terms of the oral contract, plaintiff was to make certain of defendant's timber into ties of certain dimensions (set forth) and raft the same down Current river to a point opposite the city of Doniphan and that plaintiff "was to receive the highest price then being paid for such ties at said city of Doniphan on the day on which the ties were delivered." The petition further alleged that "in performance of said contract plaintiff delivered all of said ties on the bank of the Current river at a point opposite the city of Doniphan as agreed upon in said contract; that said ties were delivered on the 6th day of March, 1908." After an allegation that a part payment of ten dollars had been made by defendant, plaintiff prayed judgment for the balance, $160.74.

The answer, besides a general denial, pleaded a custom and usage of long standing at Doniphan among buyers and sellers of railroad ties, whose means of delivery was river transportation, for the seller to deliver his ties in the tie yard of the buyer at the railroad right of way, said ties to be drawn from the river and placed in said tie yard at the expense of the seller, subject to inspection and counting by the buyer before payment was made for the ties.

The reply was a general denial.

The verdict was for the plaintiff for $160.74 and judgment was entered accordingly. The case is here on defendant's appeal.

The trial court, at the conclusion of the evidence, gave only two instructions, which are as follows:

"1. The court instructs the jury that if they find and believe from the evidence that the plaintiff had a contract with the defendant corporation to make and deliver at Doniphan, Missouri, certain ties at the price mentioned in the petition or by the evidence proven, and

that he did make and deliver at Doniphan, Mo., 423 ties, and that said ties *were delivered and turned over to defendant and accepted by them,* your verdict should be for the plaintiff in such sum as you find from the evidence defendant agreed to pay for the same.

"2.   The court instructs the jury that if you find and believe from the evidence that plaintiff and defendant entered into the contract set out in plaintiff's petition through the agent of the defendant, J. H. Murray, and that plaintiff made two hundred ties seven by nine inches, eight feet long, and two hundred and twenty-three ties six by eight inches, eight feet long, and the price of the ties seven by nine was on the — day of March, 1909, at Doniphan, Mo., forty-three cents, and the price of the six by eight ties was thirty-eight cents, and that defendant paid plaintiff ten dollars as a part payment on said ties, then you should find for the plaintiff."

The evidence shows that in March, 1909, plaintiff brought the ties down Current river on a raft and tied the raft to the bank of the river on a Saturday afternoon, and plaintiff says he tied the raft where defendant's agents directed. They deny this. The raft was moored to the bank just above the tie chute where rafts of ties were usually fastened until ready to be moved down to the chute and the ties drawn out of the river by a team. Defendant's evidence shows that this tie chute was used by others than the defendant to draw ties out of the river. Plaintiff states that after he tied the raft to the river bank, Mr. Murray paid him ten dollars on account of the ties. Meanwhile, one Wright made claim that plaintiff had made the ties from his timber, and notified defendant that he would hold defendant responsible if it were found on investigation that this was a fact. Defendant's agent then refused to have anything to do with the ties or to pay for them until an investigation was made. It was agreed that plaintiff should accompany an agent of Wright up the river to ascertain

whether the ties had been made from Wright's timber. Mr. Murray states that plaintiff came to him and said they were going up the river to settle the dispute and asked for ten dollars, saying he wanted to pay the men who brought down the raft. A. C. Jones, one of defendant's pay-agents, stated that Murray asked him to give plaintiff ten dollars; that he did so but charged the amount to Mr. Murray for the reason that there appeared to be some question about the ties. Plaintiff and one Davis, Wright's agent, went up the river. Plaintiff says that after Davis had investigated the matter on Monday, he told Davis to telephone down to Doniphan for them to draw the ties; that the river was rising; and plaintiff telephoned to Jones to put another rope on the raft to prevent it from escaping. Jones testified that plaintiff spoke of the ties over the telephone as "his raft of ties." Jones sent the rope to defendant's tie yard with a request that it be put on, and some of the men at the tie yard moved the raft about thirty feet to a more secure point and added this rope to its moorings. That night "the floods came" and this raft and the ties were lost, together with several thousand from defendant's tie yard.

In regard to the contract and its interpretation, plaintiff testified that Mr. Murray told him to go up and make the ties "and deliver them at Doniphan; that nothing was said about delivering them at the railroad at Doniphan; simply that he was to bring them to Doniphan."

J. H. Murray, defendant's representative at Doniphan with whom the contract was made, stated that the contract was that the ties were to be delivered at Doniphan on the railroad; that he would not buy ties delivered anywhere else. He stated that the ties were never drawn out of the river and never inspected and accepted by the defendant; that the ties could not be inspected in the water and that the invariable custom was to inspect them after they were drawn out on the bank.

W. R. Autrey, an agent of defendant, testified that he had a conversation with plaintiff about this contract before it was actually made in which he told plaintiff that defendant would pay him a certain (named) price per tie for ties of certain (named) dimensions and that defendant would "give the plaintiff that price on the track here at Doniphan on the right of way and that it would cost plaintiff 1½ cents per tie to draw the ties out of the water; and plaintiff then figured out what the price would be after deducting the price of drawing them out of the water."

J. T. White, for the defendant, testified that the custom at Doniphan was to inspect the ties after they were drawn out of the water and that defendant never received ties until after they were inspected, and that he had never known ties to be inspected or accepted in the water.

J. W. Swain, plaintiff's witness, testified: "The custom, among buyers of ties coming down the river to Doniphan, is to inspect the ties as they are drawn out of the water and pay for them accordingly, and the seller pays for drawing them out of the water. This custom has prevailed as long as I have been acquainted with the business. While the ties are drawn, the defendant's inspector is present and counts and inspects them as they are put upon the tie yard and then issues a ticket to the man who sold them showing the amount due him."

A. C. Jones, another witness for plaintiff, testified: "The custom among sellers and buyers of ties at Doniphan which come to that market by river is that the ties are drawn out by the parties who own them, and are inspected and then paid for. The party who is selling the ties pays for drawing them out of the water." The witness had never known of any ties being inspected in the water or accepted and paid for in the water; that "the universal custom was to draw the ties out of the water at the expense of the seller and to in-

spect them when drawn and then pay for them." "The defendant does not draw ties itself, and does not pay for drawing them except in those instances where it buys ties up the river and employs Mr. Swain to draw them out of the water when they arrive at Doniphan."

Plaintiff testified that he was to make the ties on certain lands belonging to the defendant on which he had previously made ties for the defendant. "That he was to make the ties six by eight and seven by nine, and eight feet long." When asked as to whether or not he knew that it was his business to pay for drawing the ties out of the river, he answered that he had never had any dealing with the defendant of this kind before. He stated that he had made ties for the defendant before, but had delivered them only on the river bank and had not rafted them to Doniphan, and in those cases, where the defendant had bought the ties on the river bank, the plaintiff knew that it was customary that ties were not paid for until they were inspected by the buyer, and he had never known any to be sold under any other or different arrangement. He said that he didn't know what the custom was as to the point of delivery with reference to ties brought down the river to Doniphan and sold at that point, and denied that Mr. Autrey had explained the custom to him prior to making the contract with Mr. Murray. When asked if he did not know that the ties were to be inspected before they were accepted and paid for, he said he knew nothing about the rules at Doniphan, but that this had always been the custom up in the woods when he put ties on the river bank *to sell at that point.* He also said he understood that when ties were brought in a raft to Doniphan, the custom was to deduct from the purchase price a cent and a half per tie for drawing them out of the river, and that defendant's representatives told him he would get a cent and a half a tie if he drew them out of the river himself.

The evidence shows that A. C. Jones and J. W. Swain conducted a store at Doniphan and acted as defendant's pay-agents. That when a seller did not draw his ties himself, they often performed the service and charged the seller a cent and a half a tie, deducting their pay from the price of the ties.

The foregoing statement of the evidence has been deemed necessary to show the condition in which the jury must have been with only the two instructions given by the trial court, and to show that the trial court should have told them what was meant by delivery under the terms of this particular contract and under the very conflicting evidence.

But taking the contract as stated by plaintiff, that the ties of certain dimensions were to be made on defendant's land and delivered "at Doniphan," it seems to us that a *delivery* under such a contract would necessarily contemplate counting and inspection. Defendant was to receive *ties,* not a raft floating at the end of a rope in the Current river. Under such a contract, should defendant be required to take plaintiff's word that there were 423 ties on the raft and that they were all merchantable and that 200 of them were of certain required dimensions and that 223 of them were of other dimensions? Several witnesses testified that the ties could not be counted and inspected in the water.

In the case of Stillwell v. Bowling, 36 Mo. 310, by the terms of the contract, certain chattels were to be delivered "in Hannibal," with no more specific directions or agreement as to the place of delivery. Our Supreme Court held that under such a contract, the purchaser had the right to designate the point "in Hannibal" where delivery should be made, and that the seller must conform to the buyer's election in that regard.

In the present case, in instruction No. 1, the court told the jury that "if said ties were delivered and turned over to defendant and accepted by them" their verdict should be for the plaintiff. There is absolutely no evi-

dence of an acceptance of these ties at any time. It has been often held to be reversible error to give a case to the jury upon an instructed hypothesis which there is no testimony to support. As said by BLAND, P. J., in the case of Marr v. Bunker, 92 Mo. App. 651, 661, "Instructions should be predicated on the evidence and the pleadings, not on the pleadings alone where there is no evidence in support of their allegations." Citing Railroad v. Railroad, 118 Mo. 599, 24 S. W. 478; Tyler v. Hall, 106 Mo. 313, 17 S. W. 319; Bergeman v. Railroad, 104 Mo. 77, 15 S. W. 992; Paddock v. Somes, 102 Mo. 226, 14 S. W. 746.

There being no evidence before the jury to justify a finding that appellant had accepted these ties, the giving of instruction No. 1 constituted reversible error. The judgment is accordingly reversed and the cause remanded. All concur.