OCTOBER TERM, 1888.                      457

The K. C., St. J. & C. B. Ry. Co. v. The St. J. Term. Ry. Co.

The Kansas City, St. Joseph & Council Bluffs
Railroad Company v. The St. Joseph Terminal
Railroad Company, *Appellant*.

1. **Railroads:** CONDEMNATION OF COMPANY'S LANDS FOR STREET :
RESERVATION TO COMPANY : CROSSING OF TRACK BY ANOTHER ROAD :
COMPENSATION. Where a city instituted condemnation proceed-
ings against the plaintiff railroad company for the purpose of
extending a street through its land, and a decree was entered by
consent condemning the land for street purposes and providing
that the company "shall have the right to keep and maintain its
present tracks and switches upon said land, and shall have the
right to construct such other tracks, switches and turnouts upon
said land and across said street, when opened, as it may deem
necessary for the transaction of its business," such reservation is
not the grant of an exclusive privilege, but only equivalent to the
usual permission to occupy the street with its tracks, and plaintiff
is not entitled to compensation from defendant railroad company
laying its track along the street by permission of the city and
across plaintiff's tracks therein, nor can it enjoin defendant from
so laying its track, when authorized by the city to do so.

2. —— : —— : —— : ——. Such crossing of plaintiff's
tracks by the defendant's track, and the delay incident to plain-
tiff's trains by the passage of defendant's trains over the latter's
track, is not a taking or damaging of private property, each
having an equal right to use the street.

3. —— : —— : —— : EVIDENCE. The plaintiff's rights in the
street could only be determined by the terms of the decree in the
condemnation proceeding, and evidence of the consideration which
led to the entry of the decree by consent was immaterial and
properly excluded by the court.

*Appeal from Buchanan Circuit Court.*—HON. O. M.
SPENCER, Judge.

REVERSED.

*Ramey & Brown* for appellant.

(1) The constitution and laws of this state give to any railroad corporation the absolute and unqualified right to construct and operate a railroad between any points within this state, and to cross any other railroad. Const. Mo., art. 12, sec. 13; R. S., 1879, sec. 819. All railroads in this state are public highways. Const. Mo., art. 12, sec. 14. (2) And railroad companies have the right, subject only to the consent of the local authorities, to construct their roads across, along, or upon any street. This constitutes one of the public uses contemplated in the dedication or condemnation of the street, and it makes no difference as to the rights of the public in this respect, whether the fee of the street is in the public, or in the adjoining owner or original proprietor, nor whether the easement has been acquired by voluntary conveyance or dedication, or by condemnation. R. S., 1879, sec. 765; *Julia Building Ass'n v. Bell Tel. Co.*, 88 Mo. 258, and cas. cit. And every street dedicated or condemned under the laws of this state since December 13, 1855, has been so dedicated or condemned under an express statutory provision subjecting it to this use. R. S., 1855, p. 425, sec. 29. (3) However exclusive or inviolable the rights of a railroad company may be in the property acquired by it to be used for the purposes of its incorporation, it has no exclusive privilege in the simple right to travel, with its vehicles, across the state. It must exercise this right in common with all others having the same right, and the fact that it is necessarily obstructed in its passage by the passage of another in the exercise of the same right, does it no legal injury, and entitles it to no compensation. *Railroad v. Railroad,* 30 Ohio St. 604; *B. & W. Railroad v. Railroad,* 12 Cush. 605; *M. C. Railroad v. Railroad,* 121 Mass. 124; *Julia Building*

*Ass'n v. Bell Tel. Co.*, 88 Mo. 270. (4) The right to cross is equal, and does not arise out of purchase. When the younger corporation has acquired its property right at the point of crossing, both companies stand on an equal footing, bound by mutual obligations to each other and to the public, to so use the common right as to do no unnecessary harm to each other, or to the public. *Railroad v. Railroad, supra.* (5) A railroad company has no such vested right, even in its right of way at the point of crossing, as will prevent the legislature from appropriating an easement across it for another public highway without compensation. *Railroad v. Brownell*, 24 N. Y. 345; *Railroad v. Greenbush*, 52 N. Y. 510. (6) And the legislature may even compel the railroad company, without compensation, to build and maintain all that portion of a highway laid across it as lies within its right of way. *Railroad v. Commissioners*, 79 Me. 363. (7) And may compel the older railroad company to pay its proportion of cost of crossing and connections made in its tracks, against its will, by a new company. *Railroad v. Railroad*, 4 Allen, 198, and statutes and cases cited. (8) A railroad company has no right to make the exclusive use of a street which its own convenience requires. It can only pass and re-pass on it to a reasonable extent and in a reasonable manner, without encroaching upon the rights of others who have an equal right to use it. *Gahogan's Adm'x v. Railroad*, 1 Allen, 187–190. (9) The railroad company cannot use the street as part of its freight-yard. (10) The rights of the public in a highway are paramount to those of the railroad company for all other purposes than that of transit. 2 Redf. on Railways (4 Ed.) 373; *State v. Railroad*, 25 N. J. L. 437; *State v. Railroad*, 27 Vt. 103.

*Geo. W. McCrary* also for appellant.

(1) Appellant, having been duly authorized by a valid ordinance of the city of St. Joseph, passed in

pursuance of the constitution and statutes of Missouri, to lay its track in Fourth street it will not be enjoined from so doing. High on Injunctions (2 Ed.) secs. 637, 767, and cases cited in notes 3 and 4 to sec. 767 ; *Railroad v. O' Daly*, 12 Ind. 551; *Parratt v. Railroad*, 10 Oh. St. 624; *Railroad v. Heisel*, 38 Mich. 62; *Railroad v. Domke*, 17 Pac. Rep. 777, 781 ; *Bellinger v. Railroad*, 23 N. Y. 42 ; *Mfg. Co. v. City*, 116 Mass. 458 ; *Hovelman v. Railroad*, 79 Mo. 632 ; *Randal v. Railroad*, 65 Mo. 333 ; *Cross v. Railroad*, 77 Mo. 318 ; *Rude v. City*, 93 Mo. 408 ; *Tate v. Railroad*, 64 Mo. 158 ; *Radcliffe's Ex'rs. v. Mayor*, 4 Comst. (N. Y.) 195. (2) The damages claimed as shown by the bill and the evidence are wholly consequential and therefore cannot be recoverd, and constitute no ground for an injunction. *Railroad v. Railroad*, 30 Ohio St. 604 ; *Railroad v. Railroad*, 66 Mass. 605 ; *Railroad v. Railroad*, 121 Mass. 124; Pierce on Railroads, p. 197, and numerous cases cited. *Kellinger v. Railroad*, 50 N. Y. 206. (3) And this must of course be the rule where the crossing is in a public street of a city and authorized by state constitution and statute and by municipal ordinance. Const. of Mo. art. 12, secs. 13, 14 ; R. S., 1879, secs. 765, 819 ; R. S. 1855, sec. 29, p. 425 ; *Julia Bld'g Ass'n v. Bell Tel. Co.*, 88 Mo. 258, and cas. cit. (4) The constitutional provision, "that private property shall not be taken or damaged for public use without just compensation," does not entitle respondent to relief by injunction in this case. *Stetson v. Railroad*, 75 Ill. 74 ; *Patterson v. Railroad*, 75 Ill. 588 ; *Railroad v. Schurz*, 84 Ill. 135 ; *Protzman v. Railroad*, 9 Ind. 467 ; *Railroad v. McAhren*, 12 Ind. 552 ; *Railroad v. O'Daley*, 3 Ind. 353 ; *Railroad v. Reinhackle*, 15 Neb. 279 ; s. c. 18 N. W. Rep. 69 ; *Osborn v. Railroad*, 5 Blatch. 366 ; *Currier v. Railroad*, 6 Blatch. 487 ; *Lorie v. Railroad*, 32 Fed. Rep. 270 ; *Railroad v. Domke*, 17 Pac. Rep. 777.

The K. C., St. J. & C. B. Ry. Co. v. The St. J. Term. Ry. Co.

*W. B. D. Motter* also for appellant.

(1) The decree condemning land for an extension of Fourth street in St. Joseph, set out in the record, does not, either by its express terms or by necessary implication, purport to deprive the city of the power to authorize a railroad track to be laid along Fourth street, and across plaintiff's tracks. *Plant v. Railroad*, 10 Barb. 28. (2) The right of a railroad company to cross with its tracks a public street cannot be construed as giving exclusive privileges with respect to the right of transit over such street. *Railroad v. Railroad*, 66 Mass. 505.

*Strong & Mosman* for respondent.

(1) By the judgment in the case of the city of St. Joseph against respondent, read in evidence, the rights of the city and of the public were made subject to the existing use which respondent was making of the ground that the city sought to appropriate to its use ; said judgment did not grant to respondent its rights, it merely recognized the rights respondent already had, and preserved them. (2) No matter how absolute and unqualified the right given to one railroad to cross another is, such right affords no justification of appellant in this case. Instead of crossing a single track appellant intends and was about to cross six tracks belonging to respondent, in active use for yard purposes. (3) The statutes of this state do not allow a crossing under such a state of circumstances as are shown in the case at bar. R. S., 1870, sec. 819 ; *Pittsburg v. S. W. Co.*, 77 Pa. St. 196. (4) Private property shall not be taken or damaged for a public use without just compensation. Const. art. 2, sec. 21.

BRACE, J.—This is an appeal from the decree of the circuit court of Buchanan county enjoining the defendant from entering upon, or interfering with plaintiff's several railroad tracks as now constructed and operated on, over and across Fourth street in the city of St. Joseph.

The defendant, at the time of the filing of the petition, was engaged in constructing its track on Fourth street, was approaching the tracks of plaintiff, and purposed crossing them, claiming the right to do so by virtue of an ordinance of the city of St. Joseph duly passed and approved January 7, 1887, granting it "the privilege of laying down, constructing, using and maintaining forever along Fourth street a single railroad track from the south line of Sacramento street to the north line of Lafayette street."

The accompanying map or diagram represents the relative situation of the grounds of the contestants, the tracks of plaintiff as established and operated, and the points of their crossing by the proposed track of the defendant, the plaintiff's tracks are in yellow, and the defendant's in red.

It will be observed from the map, that the defendant proposes to cross six of the plaintiff's tracks on Fourth street, that at the points of crossing, the plaintiff is the owner of the property abutting said street on each side thereof. Prior to September, 1878, the plaintiff was the absolute owner also of the strip of ground between its said abutting premises designated on the map as Fourth street, with its several tracks as located thereon, and was operating the said several tracks in its business as a common carrier of passengers and freight in connection with its tracks on its adjoining property of which the street then formed a part. At the September term, 1878, of the circuit court of Buchanan county, in a proceeding instituted by the city of St. Joseph against the

plaintiff herein to condemn property for the extension of Fourth street in said city, brought to said court, by appeal from the mayor's court, the following decree was rendered, and entered of record in said circuit court :

"The City of St. Joseph *vs.* The Kansas City, St. Joseph & Council Bluffs Railroad Company. Appeal.— This case is submitted to the court without the intervention of a jury, and by agreement of the parties the court assesses the damages to defendant, for and on account of the matters alleged in plaintiff's petition herein, at one dollar. It is therefore considered by the court that defendant recover of plaintiff one dollar, and its costs before the mayor in the condemnation proceedings, and the plaintiff recover of defendant all costs of the appeal. And it is ordered, adjudged and decreed that the right of way through the lands of defendant for the extension of Fourth street, as prayed in said petition, be, and hereby is vested in the plaintiff, said right of way being bounded as follows " : ( Here follows a description of the ground of plaintiff embraced within said street including the land at the crossing in controversy) and then proceeds : " Said defendant shall have the right to keep, and maintain its present tracks and switches upon said lands, and shall have the right to construct such other tracks, switches and turnouts upon said land and across said street when opened, as it may deem necessary for the transaction of its business, subject to such grades as may be established by the city upon said street."

The plaintiff, since the rendition of the foregoing decree, has continued to use and operate these tracks across Fourth street the same as before. The ground before and since the extension of said street through it is denominated by the witnesses the "middle yard" and is used as a freight distributing yard, in addition to its use as a roadway for plaintiff's trains both passenger and freight. Its use and how that use will be

affected by the operation of defendant's proposed track may be appreciated from the following condensed statement of the testimony of one of the witnesses read with reference to the foregoing map :

W. F. Daily testified that he was yardmaster in charge of plaintiff's St. Joseph yards, and as such had charge of their operation ; that plaintiff has two freight depots west of Fourth street, and north of the point shown on the map, one at the foot of Third street and one at the foot of Second street, two or three hundred feet apart ; that the middle yard lies between Mitchell avenue and Lafayette streets, north and south ; that the north track in the middle yard leads to the gashouse for loading and unloading their cars ; the next track is a team-track ; the next a transfer-track, used for making transfers to and from the Hannibal and St. Joseph Railroad ; the next, the main-line passenger track to the Union depot ; the next two, team-tracks for loading and unloading cars with teams ; that the next track leads to the Badger Lumber Company's yards, used for loading and unloading cars, and for storing transfers ; then there are two spurs running into the other yard ; also, that there is a main-line passenger track leading to the round-house, used for specials, and to go to the Consolidated Tank Line Company and the Anheuser-Busch Brewing Company, also used for storing cars. Then comes a freight-track, used for freight trains going to and coming from the round-house, and for switching purposes ; also a track for storing transfers, and doing work for the Barber Asphalt Company. West of Fourth street there are tracks leading to the Electric Light Works and two tracks west of same, used for unloading and storing cars. That these constitute the tracks of the middle yard. All trains of plaintiff pass through this middle yard on some of the tracks named. The regular trains consist of twelve passenger and twelve freight trains ; that all freight trains on plaintiff's road are

stopped at a place designated as the round-house yard about one mile south of the south end of the middle yard, where the yardmaster receives them, and all trains are made up at that place. These cars are all taken to the middle yard, and are there separated and set for the different transfers, and unloading and loading tracks, and freight-houses, and all cars received from or delivered to other roads, excepting the Rock Island, are received at and delivered from the middle yard. All plaintiff's main tracks, and all tracks connecting the different yards of plaintiff in St. Joseph, run through the middle yard, and across Fourth street at the point in controversy.

The witness further testified:

"Q. Supposing, Mr. Daily, that this (the ground shaded red on the map) represents the yard of the St. Joseph Terminal Company as it is to be built on this ground between Lafayette street and Pattee street; state to the court the effect which the operation of the yard would have, if any, upon the operation of the middle yard of defendant's road? A. Well if this Terminal Company's yard was worked to its full capacity as it is shown on the map it would damage this (plaintiff's) middle yard, one-half if not more, the damage would be caused by impeding and delaying its trains in crossing Fourth street."

A register of the time the Fourth street crossings were occupied by plaintiff's trains, kept for six days, August 17-23, 1887, showed that its trains were on the crossing on an average some indefinite time during thirteen and a half hours out of every twenty-four.

Besides the condemnation proceeding in which the foregoing decree was rendered, another suit had been instituted by the city of St. Joseph against the plaintiff in said circuit court, and on the trial in this case the defendant offered to prove that a suit for $90,000 was brought by the city against the Kansas City, St. Joseph

& Council Bluffs Railroad for the failure to perform an agreement to locate their machine-shops, round-houses and other buildings at this station inside the corporate limits of the city of St. Joseph ; that the suit was compromised with this condemnation suit as one suit ; that the release by the city of the claim upon which this suit was brought, every portion of it, except fifteen hundred dollars, was a part of the consideration for which the Kansas City, St. Joseph & Council Bluffs Railroad Company surrendered the land now in question to the city. To the introduction of this evidence, the plaintiff objected, and its objection was sustained by the court.

By the constitution and laws of this state, railways are public highways, and railroad companies common carriers thereon, and every railroad company has the right to construct and operate its road between any points in this state and with its road to intersect, connect with, and cross any other railroad (Const., art. 12, secs. 13, 14; R. S. 1879, sec. 819 ); and to construct its road across, along or upon any street with the assent of the corporate authorities of the city in which such street is situate. R. S. 1879, sec. 765. The exercise of these rights is, however, subject to the limitation in the constitution, " that private property shall not be taken or damaged without compensation, and such compensation must be ascertained and paid to the owner, or into court for the owner, before the property shall be disturbed, or the proprietary rights of the owner therein divested." Const., art. 2, sec. 21. The manner in which such compensation is to be ascertained is prescribed in the fifth paragraph of section 765, R. S. 1879, where one railroad company proposes to cross with its track at any point in its route the track of another railroad company, *on the grounds* of such railroad company, and the two corporations cannot agree on the amount of such compensation, or the points and manner of such crossing. Where one railroad crosses another in a public street, private property is not necessarily taken,

and therefore no provision is made for ascertaining the amount of damages for property taken in such cases, and in a city of the second class, as in this case, the power to determine the points and manner of crossing is vested in the mayor and common council. R. S. 1879, sec. 4644, sub-divisions IX., XXXIV.

So far as we are advised, no law has yet been enacted by the legislature prescribing the manner in which the amount of compensation shall be ascertained and paid to the owner of private property damaged, but not appropriated to a public use. The constitutional provision being prohibitive, however, of such damage until the amount of compensation shall be ascertained by a jury, or a board of commissioners, and paid to the owner or into court for the owner, must be held to be self-enforcing, and a court of equity would enjoin one who proposes continuously to damage private property for a public use without having first made compensation to the owner, at least, until such court has caused, by a board of commissioners or jury, as is contemplated by the constitution, the amount of such compensation to be ascertained and paid to the owner, or brought into court for him.

In this case the defendant company in its answer thus states its purposes : "That at the time of the filing of the petition herein, this defendant was constructing, and intending to construct its said railroad, along and upon said street, upon the grade of said street, in a careful manner, so as not to interrupt or interfere with travel thereon, and in so constructing its said road intended, when it should become necessary, to build and construct the same across plaintiff's tracks, on said street, by placing therein the most modern frogs and appliances for such crossings, of such construction that the same would not interfere with, injure, or in any manner affect the operation or maintenance of plaintiff's said tracks." The general question to be

determined is, will the carrying into execution of this purpose of laying its track in said street in the manner stated and operating its cars thereupon in the transaction of its business as a common carrier, *damage the private property* of the plaintiff ? There is no question of the appropriation of such property in the case, for although the plaintiff is the owner in fee of the two blocks abutting on each side of Fourth street at the point of crossing, with all the appurtenances thereto belonging, is the owner in fee of the soil over which said street is located subject only to such a public easement as the city acquired by virtue of the decree recited, and of the tracks located across said street, it is not suggested that the defendant's operations will disturb, or for that matter damage, any of this corporeal property. The damage, if any, must be to some incorporeal private property of the plaintiff, and it is claimed that the plaintiff has, if we apprehend correctly the argument of counsel, two of such items of property that will be damaged by the construction and operation of defendant's road across its tracks : first, the easement which it has in said street as an abutting proprietor, and second, the easement which was reserved to it, in the decree in the condemnation proceeding.

As to the first of these rights, it may be said, if, by virtue of that decree, Fourth street, as located across the plaintiff's property, became a public street in the usual and ordinary acceptation of the term, and as used in the statute, then the plaintiff's easement therein as abutting proprietor can in no way be damaged by the construction of defendant's road, since during its construction it is not proposed to disturb plaintiff's pass-way, and afterwards it will have the same free and unobstructed use of the street as it had before, by the same vehicles drawn upon the same tracks ; and every one that desires will have the same unobstructed ingress to, and egress from the plaintiff's abutting premises that they had before. The only damages that can be conceived of, or

that is suggested to such easement must flow from the operation by the defendant of its track in the street in its business and the delay plaintiff's trains at times will be subjected to in crossing the street by reason of the occupation in the street by defendant's trains of the same space at which it desires to and can alone cross with its trains. But that space being in a public street, the defendant's tracks having been authorized to be laid by the city, its use by the defendant for the purposes of passing to and fro over it with its trains is a legitimate use belonging to the defendant company, as well as to the plaintiff, in common with every other citizen desirous of passing over it with his vehicles. The damage caused by such delay is of the same character as that suffered by every traveller on a public highway whose movements are retarded by those of another traveler on the same highway, is not peculiar to an abutting proprietor although by reason thereof he may more frequently have use for, and be more frequently delayed in his movements in the street than other citizens. The damage resulting from such delay and inconvenience is not the subject of compensation within the meaning of article 2, section 21, of the constitution.

This brings us to the consideration of the particular and controlling question in the case, and that is, has the plaintiff company, by virtue of the decree entered in the condemnation proceedings, a private property in that part of Fourth street which runs through its premises, other than the fee in the soil, and the tracks which are located thereon; upon which we have seen the defendant company proposes to impose only such servitude as they are subject to in a public street, which would be damaged by the operation of the defendant's proposed railroad tracks. In other words, has the plaintiff a right of pass-way in that street private and peculiar to itself, not shared by the general public? If so, then it has private property that may be damaged by

the operation of defendant's track. If, on the other hand, it has only a right of pass-way in the street in common with every other citizen, then it has no private property to be damaged by the exercise by the defendant of its common right of pass-way conferred upon it by the laws of the state and the ordinance of the city. This question can be determined only by the terms of the decree, and as upon its construction, the evidence offered by the defendant as to the consideration which led to the agreement by the parties to those terms, would shed no light, we find no error in the action of the court in sustaining the objections of the plaintiff to its admission, nor on the other hand will we be any better enabled to understand those terms, from a consideration of the fact that the damage for the right of way was assessed by agreement at the sum of one dollar. Whatever rights the plaintiff has in the street with its tracks are secured to it by the terms of the decree, whatever considerations may have entered into the agreement of which it was the product. If the proceeding had culminated in a judgment of condemnation *in invitum*, in the usual and ordinary way, and at the same time or thereafter the city had given permission by ordinance to the plaintiff to lay down its tracks in the street for the purposes of its business and thereafter had given a like permission to the defendant company, there could be no question that the rights of each would be equal and coördinate in the use of the street, and that the rights of both would be coördinate only with the equal right of every other citizen to the use of the street as a public highway, and there would be no question in the case, and no case.

It must be conceded that the clause in the decree dedicating or condemning the ground to public use is as broad and comprehensive as if the proceeding had culminated in such a judgment, and that the reservation from public use of a private right of way across said

street from which the public could be excluded or to which the use of the public could be subordinated by the plaintiff, would be inconsistent with such a dedication. It may also be conceded, for the purposes of this argument only, however, that the city had the power to accept a limited dedication to the public use, subordinate to such private use, yet such a reservation, being inconsistent with the clause of unlimited dedication in the decree, ought to appear in plain and unmistakable terms, to warrant the construction that such is the meaning of the reservation clause. Such a construction ought not to be adopted, if any other reasonable one can be placed on it consistent with the terms of the decree dedicating the street to public use. Such a construction ought to be given to the decree as will give force and effect to every word in it if possible, and make the decree as a whole consistent, effective and reasonable.

Reading the decree then to this end, what is a fair construction of its terms? After condemning the right of way for the extension of Fourth street through the lands of the plaintiff as prayed for in the petition, the decree provides that the plaintiff "shall have the right to keep and maintain its present tracks and switches upon said lands, and shall have the right to construct such other tracks, switches and turnouts upon said land and across said street, *when opened*, as it may deem necessary for the transaction of its business." The right secured to the plaintiff by these terms to keep and maintain its present tracks, and to lay others if necessary for the transaction of its business, and to run its trains on such tracks in the prosecution of its business on or across that part of Fourth street described in the decree after the same shall have been opened for public use, is entirely consistent with the use of such street as a public highway by the general public, or by any other railroad company to whom the city authorities might grant permission to lay its tracks on or across said street. There is not a word or expression in the decree

that would warrant the inference that the plaintiff was to have any private, exclusive or superior right of pass-way either along or across said street, or any other or different right therein than was attainable by any other citizen with the consent of the city. To hold that there was secured to the plaintiff any right in said street, private, exclusive and peculiar to itself, not shared in by the general public by virtue of this decree, is not only not warranted by anything expressed in the decree, but would be inconsistent with and repugnant to the terms of the decree expressly condemning the property to public use as a highway.

It is clear, we think, that the plaintiff has no right of pass-way either along or across Fourth street that is private property ; that as to such right of pass-way it stands in exactly the same situation as the defendant does, or any other railroad company would which obtains permission from the city authorities to lay down its tracks in that street. As the defendant company has under the law, and the ordinance of the city, the right to lay down its tracks on Fourth street, and to cross the tracks of the plaintiff, first having made compensation for any private property belonging to plaintiff that it may be necessary to take or damage in so doing, and it appearing that no private property of the plaintiff will be appropriated or damaged by the defendant in the construction of its railway in said street, in the manner in which they propose to construct it or by the operation of its trains thereon, and that the only damage plaintiff can necessarily suffer by reason of the construction and operation by the defendant of its tracks in said street, will result solely from the occupation by the defendant at times for its passing trains, of a space in said public highway, needed at the same time by plaintiff for its passing trains, a damage not private, but common to all the public who may have occasion to use the street, occasioned by a public service to which said

street is legitimately subject, and for which the plaintiff is not entitled to compensation, we see no reason why the defendant should be restrained from laying down its tracks as it proposes to do in accordance with the permission of the authorities of the city of St. Joseph, in said street.

The judgment of the circuit court is therefore reversed and the cause remanded with directions to the circuit court to dismiss the bill. RAY, C. J., and BLACK, J., concur; BARCLAY, J., not sitting; SHERWOOD J., dissents.