**BLUE CROSS–BLUE SHIELD OF TENNESSEE, Appellant,**

v.

**John M. EDDINS, Appellee.**

Supreme Court of Tennessee.

Nov. 12, 1974.

Fred H. Moore, Spears, Moore, Rebman & Williams, Chattanooga, for appellant.

Harry Berke, Berke, Berke & Berke, Chattanooga, for appellee.

## OPINION

HENRY, Justice.

This suit involves a construction of certain provisions of a policy of insurance issued by Blue Cross-Blue Shield of Tennessee.

Prior to proceeding to the merits of the controversy it is necessary to dispose of appellee's motion to strike Bill of Exceptions.

The Final Order (entered April 16, 1974) of the trial court, contains the following recitation:

> (T)he defendant is allowed thirty (30) days from the date hereof within which to file his appeal bond, making sufficient sureties, or otherwise comply with the law and ninety (90) days within which to *otherwise perfect his appeal.* (Court's emphasis)

The appeal was perfected by the execution of an appeal bond within the thirty days.

The Bill of Exceptions was filed on May 21, 1974, or thirty-five days after the entry of the order. No extension had been granted.

Appellee insists that the phrase "to otherwise perfect his appeal" has no application to the Bill of Exceptions; that an appeal is "perfected" by the filing of an appeal bond; and that under the final order of the Court the Bill of Exceptions should have been filed within thirty days.

It is unquestionably true that an appeal is perfected when the appellant files his appeal bond. Johnson v. Johnson, 40 Tenn.App. 655, 292 S.W.2d 472 (1956).

In State ex rel. Tines v. Bomar, 205 Tenn. 572, 329 S.W.2d 813 (1959) this Court, speaking through Justice Swepston, in a case where the final decree made no provision for filing a Bill of Exceptions, said:

> At this point it is proper and necessary for an orderly disposition of this appeal to state that the purported bill of exceptions can not be considered by this Court. It was not filed within the 30 days provided by *T.C.A. § 27–111,* nor

was an extension of said period applied for or obtained. Suggs v. State, 195 Tenn. 170, 258 S.W.2d 747.

The order in the final decree allowing 45 days for perfecting the appeal, as permitted by *T.C.A. § 27–312*, does not aid the situation because said Code provision does not have any application to the time for filing a bill of exceptions. Strain v. Roddy, 171 Tenn. 181, 101 S.W.2d 475; Beiler v. State, 158 Tenn. 404, 14 S.W.2d 51.

In support of his motion, appellee places primary reliance upon Chattanooga Coca-Cola Bottling Co. v. Disbrow, 60 Tenn. App. 381, 447 S.W.2d 107 (1969).

In that case the order overruling the motion for a new trial allowed "90 days herefrom during which to *perfect said appeal*". (Emphasis ours)

The Court observed that the Bill of Exceptions was filed "within the time which the trial court could have lawfully allowed but the bill of exceptions was not filed within 30 days as provided by Sec. 27–111".

Citing *Johnson* and *Tines, supra*, the Court held that the bill of exceptions was not timely filed and dismissed the appeal.

At first blush, it would appear that under the authority of these cases the motion should be sustained and the Bill of Exceptions should be stricken.

In reading and analyzing the order in the instant case, however, we find that there is a marked difference between its. terminology and that employed in the cited cases.

In *Disbrow*, for example, the order simply granted an appeal and allowed 90 days within which to perfect it.

■ Here the order granted the appeal, allowed 30 days within which to file the appeal bond *and* 90 days within which to *otherwise* perfect the appeal.

While the terminology employed is hardly eligible for "honorable mention" and is less than worthy of emulation, a fair reading of the entire order leaves no doubt but that the court intended to grant appellant 30 days to perfect the appeal by making and filing an appeal bond and 90 days within which to prepare and file a Bill of Exceptions.

In Branch v. Branch, 35 Tenn.App. 552, 249 S.W.2d 581 (1952) Judge McAmis, the then Presiding Judge of the Eastern Section of the Court of Appeals, pointed out that:

> Judgments are to be construed like other written instruments, Permian Oil Co. v. Smith, 129 Tex. 413, 73 S.W.2d 490, 107 S.W.2d 564, 111 A.L.R. 1152, the determinative factor being the intention of the court as gathered from all parts of the judgment. Union Pac. R. Co. v. Mason City & Ft. D. R. Co., 222 U.S. 237, 32 S.Ct. 86, 56 L.Ed. 180. Such construction should be given to a judgment as will give force and effect to every word of it, if possible, and make its several parts consistent, effective and reasonable. Kansas City, St. J. & C. B. R. Co. v. St. Joseph Terminal R. Co., 97 Mo. 457, 10 S.W. 826, 3 L.R.A. 240. See also 49 C.J.S., Judgments, § 443, page 874.

We overrule appellee's motion to strike Bill of Exceptions.

We would caution, however, that this holding is only applicable in a case where the order, taken in its totality, clearly indicates a discernible intent to allow time for the filing of a Bill of Exceptions. The phrase, "perfect his appeal", standing alone, does not indicate such an intent. In this case it does not stand alone.

A decision striking the Bill of Exceptions, under this record, would have had no significant impact on the Court's consideration of this case, since the stricken Bill of Exceptions is incorporated in volume III of the transcript before this Court.

Volume I and II contain the Technical Record.

Volume II of the Technical Record is identical with the Bill of Exceptions.

The record reflects that volume I of the Technical Record (actually the complete Technical Record), was filed in this Court on May 10, 1974. The appeal had been perfected on April 18, 1974. The Bill of Exceptions was filed in the Trial Court on May 21, 1974, according to the unsigned stamp of the Clerk of that court. The Bill of Exceptions was filed in this Court on May 30, 1974. By either of these dates the Trial Court had lost jurisdiction and the case had already been transferred to the Supreme Court. See Johnson v. Johnson, *supra*.

Accompanying Vol. II of the Technical Record, is an order, signed by then Justice George F. McCanless, and by counsel for the parties, which reads as follows:

Came the parties, by their attorneys, and stipulated and agreed that the Stipulation attached hereto and signed by Fred H. Moore and Ronald J. Berke and dated June 1, 1973, with the attached exhibits is a part of the technical record and was omitted from the technical record when the record was prepared by the Clerk of the Circuit Court of Hamilton County, Tennessee, and each of them ask the Court to allow the technical record to be amended to include the stipulation attached hereto along with the four exhibits numbered Exhibit A, Exhibit B, Exhibit C, and Exhibit D.

It is, therefore, ORDERED, ADJUDGED AND DECREED by the Court that the technical record be amended to include the Stipulation and the Exhibits attached thereto.

Irrespective of the merits of this procedure it reflects a solemn agreement by counsel made with the affirmative concurrence of a distinguished former member of this Court. As a matter of ethics, logic and fundamental fairness, neither party may retreat from this agreement and it is binding upon us.

We now proceed to the merits of the controversy.

The undisputed facts are that John M. Eddins was insured by Blue Cross-Blue Shield, under a Group Master Contract issued by Blue Cross-Blue Shield. He was also insured by Continental Casualty under a group health insurance plan.

While these policies were in effect he incurred medical and hospital expenses in the sum of $1,548.40. Continental Casualty paid the hospital $1,000.00 under its policy. Blue Cross-Blue Shield paid the hospital $1,448.40 under its policy and, thereafter, was refunded the sum of $900.00 by the hospital, resulting in a net payment by Blue Cross-Blue Shield of $548.40.

Plaintiff, Eddins, sued Blue Cross-Blue Shield, in the General Sessions Court of Hamilton County for $1,000.00 representing the difference between the payment actually made by Blue Cross-Blue Shield and that which should have been paid according to his insistence.

The General Sessions Court gave judgment in the sum of $900.00 plus interest.

Blue Cross-Blue Shield appealed to the Circuit Court of Hamilton County. That Court, without the intervention of a jury, awarded judgment in the sum of $1,000.00, together with $60.00 interest and a bad-faith penalty in the sum of $250.00.

Blue Cross-Blue Shield has seasonably perfected its appeal, and assigns two errors (1) complaining of the construction of the policy by the Circuit Judge and (2) assailing his judgment for the statutory bad-faith penalty.

Blue Cross-Blue Shield insists that where an individual has another policy of health insurance without a coordination of benefits clause, he is entitled to recover "at most, the entire amount of his medical bills and that he is not entitled to make a profit."

The appellee simply insists that he paid for two policies and should be entitled to collect under each of them with neither being abated because of payment under the other.

It is necessary that we first examine the pertinent provisions of the Blue Cross-Blue Shield policy.

The first relates to exclusions and is as follows:

ARTICLE VIII EXCLUSIONS:

1. Neither basic coverage nor major medical coverage shall be provided under this contract for

   \* \* \* \* \* \*

   (e) The total amount of benefits provided or due for services covered:

   (1) not applicable

   \* \* \* \* \* \*

   (2) by any other Group Health Insurance Plan

   (3) not applicable

   Refer to Article XVII for the explanation of this exclusion.

The other, relating to coordination of benefits, reads as follows:

ARTICLE XVII COORDINATION OF BENEFITS:

1. When a Subscriber has coverage under another certificate, contract or policy for which the provisions of Article VIII, paragraph 1(e) of this contract would apply *and* such certificate, contract or policy also has a similar exclusion provision, benefits under this Contract will be provided according to the Order of Benefit Determination Rule. (Emphasis ours)

2. The Order of Benefit Determination Rule applies as follows:

   (a) not pertinent

   (b) not pertinent

   (c) When rules (a) and (b) do not establish an Order of Benefit Determination, the benefits of the certificate, contract or policy which has covered the person, who incurred eligible medical expenses for the longer period of time shall be determined before the benefits of the certificate, contract or policy which covered such person the shorter period of time.

   (d) The benefits of a certificate, contract or policy which does not have a similar exclusion provision will be determined before the certificate, contract or policy which does contain such exclusion.

Appellant's first complaint is that the trial judge did not properly consider Article VIII(1)(e).

This section, paraphrased, would simply provide that Blue Cross-Blue Shield will not provide coverage for the *total* amount of benefits paid by any other Group Health Insurance Plan.

■■ Construing the policy liberally in favor of the insured, as we are bound to do, (Hermitage Health and Life Insurance Co. v. Canter, 57 Tenn.App. 532, 420 S. W.2d 654 (1967), we hold that this provision, when read and construed in the light of the whole purpose of the policy, obviously contemplates that to the extent of the payments of other group health insurance payments, Blue Cross-Blue Shield will not duplicate payments; but it will provide coverage as to the excess. We so hold.

The case of Slomovic v. Tenn. Hosp. Ser. Assn., 203 Tenn. 380, 313 S.W.2d 265 (1957) presents an analogous situation.

There the Court was dealing with an exclusion of Workmen's Compensation payments.

The insured (injured workman) contended that the policy provided excess coverage over and above the workmen's compensation payments.

Tennessee Hospital Services Association contended that this was a total exclusion.

The insured's employer not only carried Workmen's Compensation Insurance but also a group policy.

The Court quoted from the original bill as follows:

Complainant would show to the Court that said exception contained in said policy applies only to such hospital and medical expenses as are payable under the Workmen's Compensation Law, and that the defendant's policy issued to complainant's employer, and to him, provides excess coverage for such hospitalization and medical expense as are incurred in excess of that provided under the Workmen's Compensation Law.

The Court concludes its opinion as follows:

It seems clear to the Court that the defendant is exempt from liability up to the maximum of $1,500 under the Workmen's Compensation Law of this State. We can conceive of no reason why the complainant's employer should carry a policy with the defendant covering expense of hospitalization and medical care unless it be to take care of additional expenses over and above that which he is required to carry by the Workmen's Compensation Statute, i. e. $1,500. If the policy sued on is not carried for that purpose, or some other purpose inconsistent with the requirements of the statute, it should so state without equivocation.

Immediately following Sec. VIII(1)(e) there appears the following:

Refer to Article XVII for the explanation of the application of this exclusion.

Reference to Article XVII, entitled Coordination of Benefits will reveal that it is dependent for its effectiveness upon the concurrence of two conditions, viz:

a. coverage under another certificate, contract or policy providing group health insurance

*and*

b. the containment of a similar exclusion provision in the other certificate, contract or policy.

It is agreed in this record:

a. that appellee has coverage under a policy with Continental Casualty, and

b. that the Continental policy does not have a similar exclusion provision.

It, therefore, results that there is no occasion for the application of the Order of Benefit Determination Rule. Thus we do not construe any part of Article XVII.

In reasoning that the Order of Benefit Determination Rule is not applicable, in view of the provisions of paragraph 1 as to coverage under another policy having a similar exclusion provision, we have not overlooked paragraph 2(d) which not only is a *non sequitur* but is ambiguous and inconsistent in that it contemplates another policy having *no* exclusionary clause.

We have no reason to speculate as to why this clause appears in a sequence affirmatively dependent upon the existence of a policy *having* an exclusionary clause.

Reversed.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concur.