# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### June 8, 2010 Session

## ROBERT A. McALISTER v. KELLY D. McALISTER

**Appeal from the Chancery Court for Robertson County**
**No. 14532      Laurence McMillan, Jr., Chancellor**

_____

**No. M2009-02379-COA-R3-CV - Filed July 28, 2010**

_____

In June of 2008, Kelly D. McAlister ("Wife") filed a Petition to Enforce Final Decree against Robert A. McAlister ("Husband") seeking, among other things, to enforce the parties' final decree of divorce entered in June of 2000. After a hearing, the Trial Court entered an order on November 2, 2009 finding and holding, *inter alia*, that the house at issue shall be sold and the net proceeds divided by the percentages stated in the divorce decree, and that Wife's share of Husband's pension shall be calculated upon Husband's salary at the time of divorce using a fraction with the denominator being the number of months worked by Husband when he retires and the numerator being the number of months of the seventeen year marriage with Wife to receive one- half of the calculated amount. Wife appeals to this Court. We affirm as to the division of the house, reverse as to the calculation of the pension based upon Husband's salary at the time of divorce, and order that Wife's share of Husband's pension shall be calculated upon the amount of the pension at the time Husband retires based upon the formula stated in the divorce decree.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed, in part; Affirmed, in part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

D. Scott Parsley and Michael K. Parsley, Nashville, Tennessee, for the appellant, Kelly D. McAlister.

Jennifer Noe, Nashville, Tennessee, for the appellee, Robert A. McAlister.

# OPINION

## Background

Husband and Wife were divorced by a Final Decree of Divorce ("Final Decree") entered on June 28, 2000. In pertinent part, the Final Decree provides:

4. The Court finds that [Husband] has worked for the Metropolitan (Davidson County) Fire Department for seventeen (17) years and that he has, by virtue of his employment, a retirement program. The Court finds that during the 17 years that [Husband] has worked for the Metro Fire Department, he has continuously been married to [Wife]. The Court further finds that by stipulation of the parties, through their attorneys, the parties have stipulated that [Wife] is entitled to one-half (½) of whatever 17 parts (years) of [Husband's] retirement whatever his retirement is when he actually retires. Those 17 parts represent 17 years. It is, therefore, **ORDERED, ADJUDGED AND DECREED** that [Wife] is entitled to one-half (½) of whatever 17 years of [Husband's] retirement comes to when he actually retires, from the date of his employment through this date, June 14, 2000.

5. It is further **ORDERED, ADJUDGED AND DECREED** that [Husband] is hereby **ORDERED** to pay directly to [Wife] this one-half share of what has accumulated during the 17 years or from the date of employment through June 14, 2000. By way of illustration of the Court's intent, it would state that in the event that [Husband] retires after 20 years, then he is to pay directly to [Wife] when he retires, one-half (½) of 17 Twenties. If he retires after 30 years, it is one-half (½) of 17 Thirties. This Court shall retain jurisdiction over these matters to determine an exact amount to be paid by [Husband] to [Wife] in the event a dispute arises when [Husband] retires and he is to begin paying [Wife] her share of his retirement benefits.

\* \* \*

14. As concerns [Husband's] Pepsico Deferred Compensation Account, according to his Rule 18.02 statement, the value of such as at present, is $6,091.95. The Court would propose that [Wife] receive 75% of that money as hers, but rather than disturb the 401-K which has its own difficulties and restrictions, the Court awards the entire amount of the Pepsico Account to [Husband] free and clear of any claim of [Wife]. The Court shall make up to [Wife] her 75% share in these funds in the distribution of the marital residence

when the same is sold.

15. The Court finds that the marital residence located at 3160 Lights Chapel Road, Greenbrier, Tennessee, is unencumbered. The Court finds that although the parties have a difference of opinion as to the value, the Court makes the finding that the value of the marital residence is $112,500.00. This is within the range of reasonable as estimated by the testimony of the parties. The Court finds that each party's reasonable share of that residence is 50% or $56,250.00 each. It is **ORDERED, ADJUDGED AND DECREED** that the Court awards to [Wife] as alimony in solido one-half of [Husband's] share of $56,250.00, for an additional share of the house awarded to [Wife] in the amount of $28,125.00. Therefore, when the house is sold and if the same does bring $112,550.00, [Husband's] share would be $28,125.00. The remaining balance is hereby awarded to [Wife]. The Court therefore awards to [Wife] 75% of the marital residence and 25% of the marital residence is awarded to [Husband], the value of which as of this date awarded is $28,125.00. The Court further finds that to provide [Wife] with her 75% share of [Husband's] Pepsico Deferred Compensation Account, the Court awards her an additional four percent (4%) of the value of the marital residence. Therefore when the house is sold upon the youngest child turning 18, [Wife] shall receive 79% of the proceeds as her one-half share of the marital residence plus the alimony in solido plus her 75% share of the Pepsico Account, which is a distribution of marital property. Therefore, with the percentage the Court has finally arrived at, [Husband's] share of the marital residence is 21% or the amount awarded to [Husband] as a share of the marital residence is placed at $23,625.00, which amount he shall be paid when the marital residence is sold when the youngest child reaches the age of 18 or graduates from high school whichever is last. The remaining interest therein is awarded to [Wife].

* * *

The Court finds that [Husband] agrees that [Wife] retain possession of the real property for the benefit of the parties' minor children and for them to continue to reside there until the youngest child reaches 18 or graduates from high school.

16. The Court further finds that if the parties can't agree otherwise as to the disposition of the marital residence, then the same shall be sold.

The Chancellor, a different chancellor from the one who entered the June 2000

Final Decree being interpreted, held a hearing and then entered the order on November 2, 2009 finding and holding, *inter alia*:

> The Court finds that in regards to the real property that the final decree is ambiguous as to the value of the real property. The decree states that the court is unsure of the value of the residence at the time it will be sold and at another place in the Order the court attempts to liquidate [Husband's] value at a specific sum. The Order in another section puts in percentages for value. However, following the ambiguities in paragraph 15, Paragraph [sic] 16 of the decree specifically states, "the court further finds that if the parties can't agree otherwise as to the disposition of the marital residence then the same shall be sold". The court therefore finds that to interpret this final decree the court will appoint Mr. Ken Hudgens as the special commissioner and order the house to be sold. The net proceeds of which shall be divided by percentages as found by the court in the original Order which are twenty one percent (21%) to [Husband] and seventy nine percent (79%) to [Wife].

> The Court finds that in regard to the pension issue that the court will use case law in regard to military pensions to determine value of the pension. The court finds that Chancellor Catalono's [sic] order states that the denominator shall be the number of months when he retires and the [numerator] shall be the months of marriage. Chancellor Catalano's order states the parties had been married for seventeen years. [Wife's] award shall be fifty percent of that fraction and it shall be calculated on the date of the divorce on what his income was at that time. Her pension has grown and will continue to grow but it won't grow on his pay increases.

> * * *

> It is further Ordered, Adjudged and Decreed that the value of the pension shall be calculated using a fraction whereas the denominator is the number of months when he retires and the [numerator] shall be the number of months of the marriage which was seventeen years. The wife shall receive one half of this amount to be calculated based upon [Husband's] income at the time of the divorce.

Wife appeals to this Court.

## Discussion

Although not stated exactly as such, Wife raises two issues on appeal: 1) whether the Trial Court erred in interpreting the Final Decree to require the house sold with Husband to receive 21% of the net proceeds; and, 2) whether the Trial Court erred in interpreting the Final Decree to require that Wife's share of Husband's retirement be calculated based upon Husband's income at the time of the divorce. Both Wife and Husband request an award of attorney's fees on appeal.

We begin by noting that this appeal does not involve whether the distribution in the Final Decree was equitable. The Final Decree was entered in June of 2000, was not appealed, and became a final order. As such, this appeal is confined to interpreting the Final Decree.

As this Court has explained:

The interpretation of a judgment is a question of law. We are to construe judgments as we do other written instruments, and the determinative factor is the intention of the court as collected from all parts of the judgment. The construction of a judgment should give force and effect to every word of it, if possible, and make all of the parts consistent, effective, and reasonable.

*Pruitt v. Pruitt*, 293 S.W.3d 537, 544-45 (Tenn. Ct. App. 2008) (citations omitted). *See also e.g., Blue Cross-Blue Shield of Tennessee v. Eddins*, 516 S.W.2d 76, 78 (Tenn. 1974); *Branch v. Branch*, 249 S.W.2d 581, 582-83 (Tenn. Ct. App. 1952).

We first address whether the Trial Court erred in interpreting the Final Decree to require the house sold with Husband to receive 21% of the net proceeds. To begin, we note that the Final Decree clearly and unambiguously provides in paragraph 16 that if the parties can not agree as to the disposition of the marital residence, then it shall be sold. We find no error in the Trial Court's ordering the house sold.

Wife argues on appeal, in part, that the plain language of the Final Decree provides that Husband was to receive a specific amount, i.e., $23,625.00, when the marital residence is sold and that for Husband to receive even one penny more than this would "rewrite the final decree and place upon the parties new obligations from a decree which is now nine years old." Wife in essence argues that the Final Decree used the percentages to illustrate its holding, but gave a specific dollar figure which Husband was to receive when the youngest child reached the age of eighteen or graduated from high school, with Wife to receive the remainder.

We disagree. The Final Decree uses the dollar figures to illustrate how the

holding with regard to the percentages will play out if, and only if, the house sells for a specific stated amount. This position is shown by the Trial Court's use of the wording "when the house is sold and *if the same does bring $112,550.00, ....*" (emphasis added). By clear implication, if the house does not bring that amount when sold then the numbers used in the illustration will change. The Trial Court placed a value on the house at the time of the divorce in order to assist it in equitably distributing the marital property. However, the Trial Court implicitly acknowledged that it had no way of knowing how much the house would sell for as the Final Decree provided that Wife could remain in the house until "the youngest child reaches the age of 18 or graduates from high school whichever is last." If the house now sells for more than the value placed upon it in the Final Decree, then both parties will receive the benefit of any increase in value. Conversely, both will share the loss if there is a decrease in value. We do not find that the Final Decree intended for Wife alone to benefit from such a potential windfall or to bear such a potential loss.

Although perhaps not written as clearly as possible, the Final Decree provided that if the parties could not agree on the disposition of the house it would be sold, with Husband to receive 21% of the net proceeds and Wife to receive 79% of the net proceeds. We, therefore, affirm that portion of the Trial Court's November 2, 2009 order addressing the disposition of the house.

We next consider whether the Trial Court erred in interpreting the Final Decree to require that Wife's share of Husband's retirement be calculated based upon Husband's income at the time of the divorce. The Final Decree clearly provided that Husband's retirement would be divided using the deferred distribution or retained jurisdiction method and further provided:

> The Court further finds that by stipulation of the parties, through their attorneys, the parties have stipulated that [Wife] is entitled to one-half (½) of whatever 17 parts (years) of [Husband's] retirement *whatever his retirement is when he actually retires.*

(emphasis added). Furthermore, the Final Decree even provides examples of how Wife's share of Husband's retirement is to be calculated, i.e., if Husband works for twenty years Wife is entitled to one-half of seventeen twenties, if Husband works for thirty years then Wife is entitled to one-half of seventeen thirties.

Husband argues that the calculation should be made based upon his income at the time of the divorce, not his current income. The Trial Court, however, addressed this issue in the Final Decree when it clearly provided the formula of a fraction using seventeen years of marriage as the numerator and the number of years that Husband actually works as

the denominator. Under Husband's proposed distribution, if Husband worked for twenty years, Wife would be entitled only to one-half of seventeen twenties of whatever Husband's retirement was valued at during year seventeen. Following Husband's argument would lead to a mathematical result wherein as Husband works more years, then not only does the percentage of the retirement Wife is entitled to decrease, but also the actual dollar amount which Wife would receive would decrease. Husband asserts that his retirement is based upon the five years of his highest consecutive salary, which ostensibly he earned after the divorce. However, Husband's current salary cannot be viewed in a vacuum. Husband is earning more money now than when the parties divorced partly because he has built up longevity and thus, his current salary is based in part upon the work he did during the seventeen years of the marriage.

In reality, Husband is arguing that his retirement should have been distributed using another method. In his brief on appeal, Husband asserts: "[Wife's] value of the pension should have been liquidated as of the date of divorce in regard to the pension being based upon [Husband's] income at the time of the divorce." Unfortunately for Husband, our task is not to determine if the Trial Court reached the correct result in the Final Decree. As discussed above, our task in this appeal is confined to construing the Final Decree. The Trial Court chose not to use the present cash value method to equitably divide Husband's pension. The Trial Court, and the parties by stipulation, clearly chose in 2000 to use the deferred distribution or retained jurisdiction method, which provides that the value will not be calculated and liquidated at the time of the divorce.

We agree with Wife that the Final Decree provided that Wife's share of Husband's pension would be calculated based upon his pension at the time Husband retires. We, therefore, reverse that portion of the Trial Court's order that states that Wife's share of Husband's pension shall be calculated based upon Husband's income at the time of divorce. Wife's share shall be calculated, per the Final Decree, as "one-half (½) of whatever 17 parts (years) of [Husband's] retirement whatever his retirement is when he actually retires." We remand this case to the Trial Court to oversee such calculation as necessary.

In the exercise of our discretion we decline to award either party attorney's fees on appeal.

## **Conclusion**

The judgment of the Trial Court holding that Wife's share of Husband's pension shall be calculated upon Husband's salary at the time of divorce is reversed. The remainder of the judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed one-half against the appellant, Kelly D. McAlister, and her surety; and one-half against the appellee, Robert A. McAlister.

_____
D. MICHAEL SWINEY, JUDGE